OPINION
{¶ 1} Appellant, Ms. Thuy B. ("appellant" or "Mother") appeals from the October 13, 2004 judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of her two children, H.V. and T.V., to appellee, Franklin County Children Services ("appellee" or "FCCS"). The judgment arose from the court's September 22, 2004 permanent custody adjudication hearing.
 {¶ 2} Appellant was born in Cantho, Vietnam, and her native language is Vietnamese. She immigrated to the United States at age 10. She did not graduate from high school. On September 17, 1999, at age 19, she gave birth to her first son, "H.V." H.V.'s father is Hoai V. ("Father"), who is identified as an appellee in this action. Mother and Father were never married.
 {¶ 3} The family's history with FCCS began in 2001, when H.V. was adjudicated to be dependent. He was placed in the physical custody of appellant's father (H.V.'s grandfather), with temporary custody to FCCS. In 2001, appellant's father reported to FCCS that the parents had absconded with H.V. and moved to California.
 {¶ 4} H.V.'s whereabouts were unknown until September 2002, when a friend of the parents delivered H.V. to FCCS, stating that the parents had left him and never returned. On September 12, 2002, FCCS filed the complaint from which our current proceedings arise. A September 12, 2002 magistrate's order appointed the public defender's office as guardian ad litem for H.V. The order did not appoint counsel for H.V.
 {¶ 5} The record reflects that appellant was arrested on September 12, 2002, for cocaine possession and that, at the time of her arrest, she had three outstanding warrants for passing bad checks. Although the record does not provide extensive or clear details, appellant thereafter was incarcerated at the Franklin County jail, with an expected release date of June 2003.
 {¶ 6} Appellant, represented by counsel, appeared at a hearing before a magistrate on October 31, 2002. The parents did not contest the dependency action. The magistrate found H.V. to be a dependent minor, granted temporary custody to FCCS, adopted a case plan, and granted Father supervised visitation with H.V. On November 8, 2002, the court approved and adopted the magistrate's decision.
 {¶ 7} While incarcerated, on January 17, 2003, appellant gave birth to her second son, "T.V." As Father's whereabouts were unknown and no family members were able to pick up T.V. from the hospital, on January 21, 2003, FCCS filed a complaint to obtain temporary custody of T.V. Following a hearing on January 23, 2003, a magistrate granted temporary custody of T.V. to FCCS and appointed the public defender as guardian ad litem. Appellant did not attend the January 23, 2003 hearing, nor did counsel represent appellant at the hearing. Appellant thereafter received notice of a March 10, 2003 hearing on the dependency complaint regarding T.V. Appellant did not attend the March 10, 2003 hearing, nor did counsel represent appellant at the hearing. Following the hearing, the magistrate found T.V. to be a dependent minor, committed him to the temporary custody of FCCS, and approved a case plan. On March 21, 2003, the court approved and adopted the magistrate's decision.
 {¶ 8} Pursuant to the case plan applicable to both children, FCCS monitored the well-being of the children and the progress of the parents toward reunification. A June 2003 report noted that appellant was to be released from jail on June 19, 2003, and that she had made contact with the children. It also noted that Father had made minimal attempts at visitation, and that he had been arrested.
 {¶ 9} On August 28, 2003, in lieu of moving for permanent custody, FCCS moved for an extension of temporary custody of H.V. In its motion, FCCS stated:
[Appellant], the Mother of [H.V.], currently visits and maintains contact with this child. Mother was released from a penal institution on June 16, 2003. Mother has provided clean urine screens and is enrolled in parenting classes. Mother needs more time to complete case planning services toward reunification with this child.
[Father], the putative father of [H.V.], currently visits and maintains contact with this child. Father is employed, has provided clean urine screens and is enrolled in parenting classes. Father needs more time to complete case planning services toward reunification with this child.
The court continued the hearing on the motion, noting that appellant was to start unsupervised visits with the children, as well as counseling.
 {¶ 10} A November 10, 2003 report noted that both parents had completed parenting classes, had established housing, and were employed. They also had been allowed unsupervised visitation. However, after both parents tested positive for cocaine on October 23, 2003, the visitation became supervised again.
 {¶ 11} Following a hearing on November 14, 2003, the magistrate found that an extension of temporary custody of H.V. was in his best interest and that the parents had made significant progress on the case plan. The court approved the magistrate's findings.
 {¶ 12} On December 7, 2003, FCCS moved to extend temporary custody of T.V. In its motion, FCCS stated:
[Mother and Father] * * * visit and maintain contact with this child. Parents need more time to complete case planning services toward reunification with this child. Parents need to obtain employment and complete a drug and alcohol program.
 {¶ 13} Following a hearing on January 21, 2004, the magistrate recommended that FCCS's motion to extend temporary custody be sustained, finding that the parents had made significant progress on the case plan. On January 28, 2004, the court approved the magistrate's ruling and extended the case plan then in effect.
 {¶ 14} On March 9, 2004, FCCS moved for permanent custody of both children. In support of each motion, an FCCS social worker, Ms. Jones, submitted virtually identical affidavits. As to H.V., the affidavit stated, in part:
Since the time of temporary commitment, [appellant], the mother of said child, has acted in a manner such that the child cannot be placed with her within a reasonable period of time or should not be placed with her. Mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home; the parent failed to utilize medical, psychiatric, psychological, or other resources that were made available to the parent for the purpose of changing parental conduct to allow the parent to resume and maintain parental duties. Mother has failed to complete drug and alcohol counseling, maintain employment and stable housing. Mother has a chronic emotional illness that is so severe that it makes her unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds a permanent custody hearing. Mother for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. * * *
The affidavit in support of the motion relating to T.V. made the same allegations against appellant. And, with the exception of the deletion of the reference to "chronic emotional illness," both affidavits made the same allegations with respect to Father, noting that he had failed to complete drug and alcohol counseling, maintain employment or establish housing.
 {¶ 15} Upon motion by FCCS, the magistrate continued the hearing on the permanent custody motion, noting "service" as the reason. The magistrate also noted "FCCS may expand visitation upon progress in the case plan."
 {¶ 16} An April 22, 2004 report noted that the parents were visiting the children more frequently. However, the report noted that the parents tested positive for cocaine in November and December, and they frequently missed urine screens. The report noted that appellant had been clean since the December screen, and Father had been clean since a positive January screen. It also noted employment and housing changes for both parents.
 {¶ 17} On May 13, 2004, without identifying the movant, the magistrate continued the hearing on the permanent custody motions, noting that the reason was to obtain additional information.
 {¶ 18} A May 17, 2004 magistrate's order provided:
* * * [T]he mother may have unsupervised visitation with the children, as arranged by F.C.C.S. Mother is not to allow father to have any contact during said visits. Father may have visitation with the children at the discretion of F.C.C.S. Continue pending motions before the visiting judge.
 {¶ 19} A September 1, 2004 report noted that Father had been terminated from two counseling programs, and that he was currently in jail. It also noted that appellant was working as a nail technician, but had not submitted pay stubs. Appellant had missed several urine screens, and she had lost her apartment. She had been sleepy and sick at the last visit, and also had lost weight.
 {¶ 20} On September 22, 2004, the court held an afternoon hearing on the permanent custody motions. FCCS called appellant on cross-examination. Appellant testified that she had signed a lease for a two-bedroom apartment just four days prior to the hearing. She stated that she was currently working as a nail technician and, in that capacity, drove with her boss to Indianapolis a couple of days per week. She stated that she hoped to work for her stepsister as a nail technician in Columbus, but admitted that she did not know whether her stepsister would be able to hire her.
 {¶ 21} Appellant gave her account of events in the 2000 to 2003 timeframe; from this account, it is impossible to determine when she was jailed and for what offenses. She was released in June 2003 and was to be on probation until June 2005. As a term of probation, she had to submit to random drug tests.
 {¶ 22} When asked whether she was in a position to care for her children, she stated: "Yes, I am." (Tr. at 51.) She stated that she could ask for her parents' help.
 {¶ 23} FCCS also called Ms. Jones, who had long-term knowledge of the circumstances surrounding the children. She testified that appellant and Father finished parenting classes, went to drug counseling, went to psychological evaluations, and completed additional counseling in May 2004. She stated that appellant had completed only 19 of 52 drug screens; Father had completed only 17 of 52.
 {¶ 24} As to appellant, Ms. Jones testified that appellant's housing situation had been unstable, and that appellant had last submitted proof of income in June 2004. Over objection by appellant's counsel, Ms. Jones expressed her opinion that appellant is a drug user. She also gave an account of erratic and chaotic visitation with the children, including instances when appellant did not show up for visitation.
 {¶ 25} Ms. Jones testified that there is "some bonding" between appellant and the children. (Tr. at 80.) However, the children do not express anxiety when the visits do not occur or when they end. Appellant talks to the children by phone. The children do not ask about the parents. In foster care, the children are doing well, and their behavior is age appropriate. The children are bonded with the foster parents and see the foster mother and father as their parents. In Ms. Jones' view, adoption is in the best interest of the children.
 {¶ 26} On cross-examination by appellant's counsel, Ms. Jones acknowledged that appellant was not working for awhile because she was pursuing her nail technician licensure, but stated that FCCS considered only current income of a parent, not future income. Ms. Jones stated that appellant's most recent positive drug screen, as opposed to a missed screen, was January 2004. After Ms. Jones' testimony, FCCS rested.
 {¶ 27} Appellant's counsel called appellant to testify again. She testified that she had lived in the United States since the age of 10, and that she spoke English "[a]bout 80 percent." (Tr. at 119.) She stated that she sometimes has difficulty understanding what the caseworker was asking her to do. The following exchange occurred:
[Mother:] Like how she — how she wanted me to do it. Sometimes I misunderstand.
[Mother's Counsel:] Can you give me an example of that?
[Mother:] Like how am I supposed to do it. Like the — the urine screens, I thought that after I finish my drug counseling I don't have to do them no more.
(Tr. at 120.)
 {¶ 28} Appellant testified that she had passed her nail technician licensing exam in May 2004, after going to school for three months. She stated that she was currently working and had a take-home pay of $600 per week.
 {¶ 29} Both the guardian ad litem and FCCS cross-examined appellant. She admitted that she maintained a relationship with Father, even though his actions had held her back in their effort to reunite with the children. She also admitted to missing drug screens even after receiving a notice informing her that the unsupervised visitation was stopped because she had missed the screens. She stated that she had been unable to do the screens because her car was impounded due to the actions of someone else driving her car.
 {¶ 30} In her closing argument, FCCS's counsel focused on the parents' unstable housing, appellant's unstable employment, including her need to travel in her current position, and the missed drug screens. As to the best interest of the children, she stated:
The — the kids are — are of young age. One child's been out of the home since birth and probably has little to no relationship with her [sic] parents except during the visitation and — and probably knows the parents just during the visitation. The other child's been out of the home. They got something of a good life and they are definitely in need of a permanent placement and the parents have not, you know, demonstrated that they will provide that or come now or later future [sic]. * * *
(Tr. at 170.)
 {¶ 31} In his closing argument, the guardian ad litem presented to the court his report, which he had filed that afternoon (see below). As to the parents' relationship with the children, he stated:
These children are very young, Your Honor. One just turned five a few days ago and one is a year and a half old. I think the caseworker was able to appropriately testify concerning the interaction between the — the parents and the children and the concern regarding the bonding that — that really is limited — is limiting and that the children don't really ask for the parents. They don't really — agitated by them leaving as well that they're bonded to the foster parents. And essentially that's occurred because they've really been out of the parents care for a significant part of their lives and that falls into the best interest Section of 2151.414(D) concerning that the interaction, interrelationship of the children with the parents. Again, the children are — being very young really, they're limited in how they can express what their desires are and that is shown by interactions that we — that would have better been served if they, you know, desired more to be with the parents, but you know, a lack of that is by the action of the parent and not being able to parent this child — these children for so many years.
(Tr. at 171.)
 {¶ 32} The guardian ad litem was unequivocal in his recommendation:
Additionally, if you want to look at (E)(9) concerning the treatment, the drug treatment as well and the parents' forthrightness as to compliance with services. It's very disappointing and disturbing as to how many screens were missed. I don't think mother has been forthright with the Court. I don't think she's been forthright with the Agency or to herself even to her own family as far as what she needs to comply with in order to be able to parent these children. And at this time I'd ask the Court to grant the Agency's request. I think it's in the best interest of these children that PCC be granted to Children Services and numerate those factors.
(Tr. at 172.)
 {¶ 33} In his closing argument, appellant's counsel argued that she had completed much of what the case plan required. In his view, the case boiled down to stability of housing, stability of employment, and the missed drug screens. As to the drug screens, he argued that FCCS had not met its burden to show that she was a drug user. Their only proof, he argued, was an absence of evidence, not actual evidence of drug use. He also noted that appellant was on probation, which also required her to follow the law.
 {¶ 34} As for appellant's employment, he argued that she was "basically doing the American dream" by going to school and getting her nail technician license. (Tr. at 174.) FCCS's reliance on the lack of proof of income, he argued, was insufficient and contrary to appellant's testimony.
 {¶ 35} As to appellant's relationship with the children, he argued:
As far as — as far as the visitation with the kids, it seems perfectly clear to me that there is some, I — I guess I shouldn't say some, that there is a good amount of bonding with the children. My client sat there on the — on the stand and everybody witnessed she obviously cares for these children. She wouldn't be sitting there crying as she was testifying, if she didn't. She attends the visits. I don't think that there was any dispute that she attended most of the visits. There were only a few and I believe she called. The — the testimony showed that she called to indicate when she could not make it there.
* * * She obviously loves the kids. She wants them to be in her life.
(Tr. at 176-177.)
 {¶ 36} As for housing, he argued that appellant had made a clean break from Father. He concluded: "She has the apartment now. She has the job now. She has the ability now and she should have the children in her home now." (Tr. at 178.)
 {¶ 37} At 2:23 p.m. on September 22, 2004, the day of the permanent custody hearing, the guardian ad litem for both children filed a report with respect to each child. With the exception of different names and dates, the reports were identical. Although signed only by Mr. Suikienik, the report also referred to "Michelle Brown, Lay Guardian ad Litem." The purpose of the report was to provide "a detailed description of some of the activities" that had been performed. With respect to each child, the report described the following:
(1) The Franklin County Public Defender was appointed as Guardian ad Litem for [named child] under [case number] and attended all hearings and made a full investigation during the pendency of these matters.
(2) Since that time a representative of the Franklin County Public Defender office has attended and participated in all Court hearings including any case plan and review hearings.
(3) Documents, which have been reviewed, include but are not limited to all Discovery from Franklin County Children Services, the State of Ohio and other parties, the Court files and all Franklin County Public Defender files.
(4) Persons interviewed include the following:
Becky Jones — Caseworker for FCCS Julie Walters — Attorney for FCCS Bob McClaren — Attorney for FCCS
(5) On [named date] the [named child] was adjudicated a Dependent Minor Child. Disposition of the above adjudication was continued to [named date]. On [named date] Temporary Court Custody was granted to Franklin County Children Services, a caseplan was submitted and a review date was set. On [named date] Franklin County Children Services filed the current motion requesting permanent custody.
(6) The recommendation of the Guardian ad Litem will be based upon the evidence presented at trial, with the best interest consideration for the minor child and in consideration of, but not limited to, the relevant factors in Ohio Revised Code §2151.414(D).
 {¶ 38} On October 13, 2004, the court issued a final order, which granted permanent custody of both children to FCCS. The court's findings of fact included the following:
The mother completed the case plan required parenting classes, drug assessment and counseling and mental health evaluation. The father completed less than the mother.
The mother has had multiple criminal or driving violations and is on probation. The father was a poor influence on the mother. The parents have failed to establish stable and consistent housing and income. There is not verified current housing or stable income.
The parents have missed over 50% of the drug screens. The mother's drug of choice is cocaine.
Some visits have been missed.
There is some bond with the mother but the primary bond by the children is with the foster parents.
The parents have been unable to secure a stable life for themselves and likewise do not meet the children's present needs and will not in the foreseeable future.
 {¶ 39} Pursuant to R.C. 2141.419, the court concluded that the "Guardian Ad Litem Report supports permanent custody to [FCCS]." The court's conclusions of law also included the following:
If permanent custody were granted, it has been assessed how the child would be affected in their interactions and interrelationships with the following people because of the legal conditions of a permanent custody status:
Parents' contact will not be maintained.
Contact will be maintained with the siblings by placement together.
Foster parents are potential adoptive family.
 {¶ 40} As for both H.V. and T.V., the court stated: "The child's wishes concerning permanent custody were not expressed because of young age."
 {¶ 41} Based on its findings and conclusions, the court ordered permanent custody of H.V. and T.V. to FCCS and permanent revocation of all parental rights, privileges, and obligations.
 {¶ 42} Appellant filed a timely pro se appeal to this court, and this court appointed her counsel.
 {¶ 43} In her initial brief on appeal, appellant raised the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
The Trial Court Erred in Ordering Permanent Commitment of [H.V. and T.V.] to [FCCS] Because the Agency Failed to Prove its Case by Clear and Convincing Evidence as required by O.R.C. Section2151.414(B)(1), Because the Holding was not supported by Sufficient Evidence, and because the Holding was against the Manifest Weight of the Evidence.
SECOND ASSIGNMENT OF ERROR:
The Trial Court Erred in Failing to Appoint an Attorney to Represent Mother in her Son's Case at the Adjudicatory Phase of the Dependency Proceeding where the Pleadings show no Waiver of Right to Counsel and Mother was Not present for that Hearing, and No Dispositional Phase of the Dependency Proceeding was Held.
 {¶ 44} Appellant also filed a supplemental brief, which raised the following:
THIRD ASSIGNMENT OF ERROR:
The Trial Court Erred in Ordering Permanent Commitment of [H.V. and T.V.] Because the Guardian ad Litem for the Children had a Conflict of Interest and Should have Withdrawn.
 {¶ 45} Following oral argument, this court asked the parties to file supplemental briefing on the question of whether the trial court should have appointed separate counsel for the children. In that supplemental briefing, appellant raised the following assignment of error:
FOURTH ASSIGNMENT OF ERROR:
The Trial Court Erred In Ordering Permanent Commitment of [H.V. and T.V.] To [FCCS] Without Appointing Counsel for [H.V.].
 {¶ 46} In considering the trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had sufficient evidence before it. "`[E]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court].'" Inre Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 59, quoting Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Further, "`if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.'"Brooks at ¶ 59. In short, "`[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" In re Hogle (June 27, 2000), Franklin App. No. 99AP-944, quoting In re Awkal (1994),95 Ohio App.3d 309, 316.
 {¶ 47} It is also "well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes
(1997), 79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155, 157. "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" Hayes at 48, quoting In reSmith (1991), 77 Ohio App.3d 1, 16. Accordingly, parents must receive every procedural and substantive protection the law permits. Id. "Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children." In re Swisher, Franklin App. No. 02AP-1408, 2003-Ohio-5446, at ¶ 26, citing In re Cunningham
(1979), 59 Ohio St.2d 100, 105.
 {¶ 48} Pursuant to R.C. 2151.414(B)(1), the court, after a hearing, may grant permanent custody of a child to FCCS if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that one of following applies: (a) the child cannot or should not be placed with the parents; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.
 {¶ 49} Here, both H.V. and T.V. had been in temporary FCCS custody for 12 or more months of a consecutive 22-month period. Therefore, the issue before the court was whether permanent FCCS placement was in their best interest. R.C. 2151.414(D) requires that, in determining the best interest of a child, the court must consider all relevant factors, including, but not limited to:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 50} FCCS has the burden to prove "best interest" by clear and convincing evidence.
* * * Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 104. Here, the court determined that FCCS had met its burden to show that it is in the best interest of H.V. and T.V. to grant permanent custody to FCCS, and the court terminated appellant's parental rights.
 {¶ 51} We first address appellant's second assignment of error, which asserts that the court erred by failing to appoint an attorney to represent her regarding T.V.'s dependency adjudication and resulting temporary custody order. Appellee argues that appellant failed to request counsel and failed to file a timely appeal of the dependency order.
 {¶ 52} Appellant's own appendix contains evidence that she received notice of the complaint regarding T.V. and FCCS's request for custody. The record also shows that appellant received, by certified mail, notice of the March 10, 2003 hearing to determine whether T.V. was abused, neglected or dependent. Appellant has not alleged that she did not receive notice of the hearings or was not served with the temporary custody order. That temporary custody order, entered on March 21, 2003, was a final appealable order. Murray at syllabus. Therefore, App.R. 4(A) required appellant to file an appeal within 30 days. Appellant did not file an appeal of that order, and we have no jurisdiction to address it now. Ditmars v. Ditmars (1984),16 Ohio App.3d 174, paragraph one of the syllabus.
 {¶ 53} Furthermore, appellant has presented no evidence showing that her rights were violated. In two separate paragraphs, the certified mail notice clearly states that appellant has the right to a lawyer and that the court will appoint an attorney for her if she cannot afford one. It gives clear instructions for contacting the court and even states: "You should do this immediately." Having been advised of her right to counsel, and having failed to request counsel, appellant cannot support her argument that the court erred by failing to appoint an attorney for her. In addition, the transcript of the March 10, 2003 hearing shows that the hearing included a disposition, that is, temporary custody of T.V. to FCCS. Thus, we overrule appellant's second assignment of error.
 {¶ 54} We now address appellant's first assignment of error, which asserts that the trial court erred because FCCS failed to prove its case by clear and convincing evidence. For the reasons that follow, we agree.
 {¶ 55} Appellant begins by arguing that she substantially complied with the case plan and, therefore, would be a suitable permanent placement for the children. In response, FCCS argues that compliance with the case plan, standing alone, is not enough for permanent placement and, even if it were enough, appellant did not complete the case plan successfully. FCCS points to appellant's history of unstable housing and employment. In addition, FCCS states: "Appellant failed to complete her urine screens for three months before trial and had a positive screen for cocaine as early as January of 2004. It was reasonable, therefore, for the caseworker to conclude that Appellant was probably using cocaine." As to the evidence relating to her drug use, appellant argued for the first time on reply that the caseworker's testimony was inadmissible hearsay based on this court's decision in In re McLemore, Franklin App. No. 03AP-714, 2004-Ohio-680.
 {¶ 56} In McLemore, this court reversed a trial court's termination of parental rights based on the mother's positive drug tests. There, the trial court had relied on testimony from the mother's probation officer, who testified that the mother had tested positive for marijuana. The drug test lab reports, however, had not been submitted into evidence. Under these circumstances, this court held, the probation officer's testimony was inadmissible hearsay.
 {¶ 57} Likewise, here, the caseworker testified as to appellant's positive drug tests, but did so without the lab reports of the drug screens being admitted into evidence. Based on McLemore, we find that the caseworker's testimony in that respect was inadmissible hearsay. As in McLemore, however, our inquiry does not end there.
 {¶ 58} As FCCS points out, appellant did not object to the admission of the testimony as inadmissible hearsay. (Appellant's trial counsel did object, but on other grounds.) This failure to object waives all but plain error. McLemore. "Plain error is applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." Id. at ¶ 11, citing In re Honaker (May 10, 2001), Franklin App. No. 00AP-1269; and Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus. In McLemore, this court found that plain error had occurred because the trial court had relied explicity on the drug-related testimony, and because that testimony was a significant factor in the trial court's decision. We cannot find such explicit reliance or significance here. While the trial court found that the "parents have missed over 50% of the drug screens" and that appellant's "drug of choice is cocaine[,]" FCCS's reliance on the positive drug test to support the decision on appeal notwithstanding, there is no explicit reference to the positive drug test anywhere in the trial court's decision. Therefore, we cannot say that the caseworker's testimony about the positive drug screens was a significant factor in the court's decision or that the outcome would have been different if the court had excluded the testimony. Thus, admission of the hearsay testimony does not provide grounds to overturn the court's decision.
 {¶ 59} We turn now to the question whether FCCS otherwise met its burden to show by clear and convincing evidence that permanent custody is in the best interest of the children. As noted, in determining the best interest of a child, the court must consider all relevant factors, including the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child. At the time of the hearing, H.V. was five years old and T.V. was 20 months old. While T.V. may have been too young to express his opinions about placement, H.V. was arguably capable of expressing his wishes.
 {¶ 60} As to the wishes of H.V. and T.V., the guardian ad litem noted only that "being very young really, they're limited in how they can express what their desires are[.]" (Tr. at 171.) The guardian ad litem's report identifies the persons the guardian interviewed, but does not state that he met with or interviewed either child, or even observed either child personally. The caseworker testified as to the children's relationship and bonding with the parents, as compared to the foster parents, but she did not testify as to the wishes of either child and, in any event, the court could not consider such testimony as to the children's wishes. See In re C.M., Summit App. No. 21372, 2003-Ohio-5040. Neither the foster parents nor the lay guardian testified, and the court conducted no interviews. In short, there is nothing in the record suggesting that anyone asked H.V. his wishes, and no one testified as to what those wishes were.
 {¶ 61} In its brief, FCCS asserts that "the guardian's closing remarks imply that some kind of investigation must have been made concerning the wishes of the children. Otherwise, how else can the guardian know that the children were limited in the ability to express their desires?" In response to FCCS's assertion, we note again that FCCS's burden is "clear and convincing." A record completely devoid of any evidence that anyone made any attempt to discern whether a five-year-old child is capable of expressing his own wishes about losing all contact with his biological mother, let alone to discern what those wishes are, does not meet the "clear and convincing" standard.
 {¶ 62} In Swisher, we similarly held that a nearly seven-year-old child, a nearly six-year-old child, a four-and-one-half-year-old child, and even a three-and-one-half-year-old child were arguably capable of expressing their wishes as to placement. There, even though the record contained some evidence that the older children had expressed their wishes at one time, this court found that the record did not contain reliable evidence concerning the children's wishes and, therefore, reversed the trial court's findings. See, also, In re Ridenour, Lake App. No. 2003-L-146, 2004-Ohio-1958 (trial court erred where there was no evidence of children's wishes and guardian ad litem had failed to discern them); In re Williams (Mar. 20, 2001), Franklin App. No. 00AP-973 (trial court committed reversible error where the record did not contain reliable evidence about the seven-year-old child's wishes). Likewise, here, the trial court's failure to discern whether H.V. and T.V. were capable of expressing their views and, if so, what those views are, requires reversal of the trial court's findings. Therefore, we sustain appellant's first assignment of error.
 {¶ 63} The court's failure to discern the children's wishes also raises a question as to whether the court should have appointed separate counsel for the children, as appellant argues in her fourth assignment of error. In making that argument, appellant relies on In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500 ("Williams"). There, the court held: "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." Id. at syllabus.
 {¶ 64} In Williams, the Ohio Supreme Court began by noting that the plain language of R.C. 2151.352 provides for the right to appointed counsel for every child "not represented by the child's parent, guardian, or custodian" in a permanent custody proceeding. Id. at ¶ 13. The court approved of the court of appeals' recognition that, "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at ¶ 17.
 {¶ 65} As this court noted in Brooks, at ¶ 80, the Ohio Supreme Court in Williams also apparently approved of the court of appeals' holding that:
* * * [I]n some instances, pursuant to Juv.R. 4(C) and R.C.2151.281(H), a guardian ad litem can serve a dual role as both the guardian ad litem and the juvenile's attorney, and thereby fulfill the juvenile's right to counsel, so long as there has been an express dual appointment. * * * However, this is so only when the attorney who has been appointed to serve in both capacities recommends a disposition not in conflict with the juvenile's wishes. If such a conflict arises, the juvenile court must appoint independent counsel to represent the child. * * *
 {¶ 66} Here, FCCS argues that there are no grounds for appointing separate counsel in this case because the wishes of the children and the guardian ad litem are not in conflict. In this respect, FCCS relies on the same inferences we noted, and discredited, above. FCCS simply cannot argue that the children's views are aligned with the guardian ad litem's views where no one determined what the children's views are.
 {¶ 67} Nor can FCCS argue, as it does here, that appellant lacks standing to raise the question whether the children required separate counsel because appellant's position is not aligned with the children's position. With no evidence of what the children's views are, FCCS has no grounds to make such an argument.
 {¶ 68} This court has provided guidance on these questions previously. In Swisher at ¶ 43-44, this court gave explicit instructions for a remand to determine and address the wishes of a child:
When a motion for permanent custody is filed with the court, "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of thehearing" for permanent custody. R.C. 2151.414(C). (Emphasis added.) On remand, the trial court should make certain that the guardian ad litem's report is timely submitted. The court should also make sure that the report contains a recommendation regarding permanent custody, an evaluation of the children's competency and their best interests, and a statement of the children's wishes to the extent they have them, unless the children will be testifying at the hearing or will be interviewed in chambers.
Further, should the wishes of the children, as expressed either directly by them or through the guardian ad litem, evidence a strong desire to be reunited with appellant, and should the guardian ad litem's position regarding the best interest of the children conflict with those wishes, the trial court should appoint separate counsel to represent the children.
 {¶ 69} Again, in Brooks at ¶ 87, this court advised: "Following In re Williams, juvenile courts and guardians ad litem would be well advised to more specifically ascertain and address the wishes of the children so as to guard against denial of the children's right to counsel[.]"
 {¶ 70} The process here fell far short of this court's guidelines. No one, either before or during the hearing, ascertained whether the children, particularly H.V., were capable of expressing their own wishes about placement or what those wishes were. There is no evidence in the record that the guardian ad litem ever met with, interviewed or even observed the children. The guardian ad litem's report, which was filed during the hearing, did not take a position on what the best interest of the children was and only stated: "The recommendation of the Guardian ad Litem will be based upon the evidence presented at trial, with the best interest consideration for the minor child and in consideration of, but not limited to, the relevant factors in Ohio Revised Code § 2151.414(D)." Although not raised here, the failure of a guardian ad litem to make a timely recommendation — and the corresponding failure to give timely notice of that recommendation to the parent(s) — could present a procedural due process concern. See In re Salsgiver, Geauga App. No. 2002-G-2477, 2003-Ohio-1206, at ¶ 23 (holding that "the purpose for requiring the guardian ad litem to submit his report prior to trial is to give the parties an opportunity to rebut any assertion contained in the report"). Here, given the lack of substance in the guardian ad litem's report, it simply gave no basis for the court to conclude that the "Guardian Ad Litem Report supports permanent custody to Franklin County Children Services."
 {¶ 71} During the hearing, it became quite clear, despite his report to the contrary, that the guardian ad litem had a position and that it was in conflict with the Mother's position. See, for example, guardian ad litem's cross-examination of Mother. (Tr. at 152.) But, at that point, without evidence of the children's views, the court had no way of determining whether the children shared the guardian ad litem's views and whether they needed separate counsel. Clearly, the court must determine the children's views and the need for counsel prior to the start of the hearing in order for any appointment of counsel to be meaningful.
 {¶ 72} In short, without any evidence of the children's wishes before it, the court did not make, and could not have made, the meaningful determination Williams requires as to whether the children need separate counsel. Accord Ridenour.
Therefore, on these grounds, we sustain appellant's fourth assignment of error, reverse the trial court's decision, and remand the case for further proceedings.
 {¶ 73} As to that remand, we reiterate, again, the instructions this court has given previously. On remand, the court must ensure that the guardian ad litem's report is timely submitted, that is, submitted at a time that allows the court to make meaningful determinations. The court must ensure that the report contains a recommendation regarding permanent custody, an evaluation of the children's competency and their best interests, and a statement of the children's wishes to the extent they have them, unless the children will be testifying at the hearing or will be interviewed in chambers. A report that takes no position on the best interest of the children or that is filed after the hearing is underway is not sufficient for purposes of determining whether the children need separate counsel.
 {¶ 74} Should the wishes of the children, as expressed either directly by them or through the guardian ad litem, evidence a strong desire to be reunited with appellant, and should the guardian ad litem's position regarding the best interest of the children conflict with those wishes, the trial court should appoint separate counsel to represent the children.
 {¶ 75} Because our decision on the first and fourth assignments of error disposes of the case entirely, we need not reach appellant's third assignment of error, which asserts that the court erred in ordering permanent commitment of H.V. and T.V. because the guardian ad litem had a conflict of interest and should have withdrawn. We note that this issue will not re-occur on remand because the public defender's office has moved to withdraw as guardian ad litem in light of the conflict and, therefore, will not be re-appointed on remand.
 {¶ 76} In conclusion, we sustain appellant's first and fourth assignments of error, overrule appellant's second assignment of error, and decline to address appellant's third assignment of error. We reverse the trial court's decision to grant permanent custody of H.V. and T.V. to FCCS, and remand these cases for further proceedings consistent with our opinion.
Judgments reversed and causes remanded.
McGrath and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.