[Cite as *In re I.C.*, 2016-Ohio-506.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| In re | : | |
| [I.C.] | : | |
| | : | No. 15AP-677 |
| | | (C.P.C. No. 10JU-7320) |
| [D.C., Sr., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on February 11, 2016

*Robert J. McClaren*, for appellee Franklin County Children Services.

*Peterson, Conners, Fergus & Peer LLP*, and *Istvan Gajary*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

DORRIAN, P.J.

{¶ 1}  Appellant, D.C., Sr., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of his minor child, I.C., to appellee, Franklin County Children Services ("FCCS"). Because we conclude the juvenile court's decision was supported by competent, credible evidence, and the court did not abuse its discretion by finding that appellant failed to substantially complete his case plan, we affirm.

{¶ 2}  The action giving rise to this appeal involves custody proceedings for five minor children of mother, M.H., identified as I.C., born May 8, 2007, H.C., born March 5, 2009, D.C., Jr., born August 29, 2010, Da.K., born March 8, 2012, and De.K., born January 23, 2013. This case began in May 2010 when FCCS filed a complaint asserting

that I.C. and H.C. were neglected or dependent children.  Through the course of the proceedings, all five of the aforementioned children were placed under the custody of FCCS.  Appellant was believed to be the father of I.C., H.C., and D.C., Jr. However, it was ultimately determined through genetic testing that appellant is not the biological father of H.C. and D.C., Jr., and he was removed as a party as to those children. Da.K. and De.K. are the children of M.H. and another man, A.K.  Ultimately, FCCS filed motions requesting permanent custody of all five children.

{¶ 3}  The juvenile court conducted a hearing on the motions over the course of several days between October 27 and November 3, 2014.  A caseworker from FCCS testified regarding the reasons FCCS sought permanent custody of the children and the custodial history of the children.  She also testified regarding the case plans set in place for each of the parents under the court's prior temporary orders and the progress of each parent under his or her case plan.  The guardian ad litem ("GAL") appointed by the court for the children also testified regarding his observations and recommendations.

{¶ 4}  M.H. testified at the hearing regarding her relationship with her children, her living arrangements, and her progress on her case plan with FCCS.  As relevant to this appeal, M.H. testified about her relationship with appellant and the time they spent together as a couple.  M.H. testified that she and appellant lived together at the Lincoln Park Apartments for a time, until they had to leave because those apartments were being demolished. M.H. stated that they subsequently moved to a house on Fifth Street, where they lived for approximately one month before moving because the water heater was broken.  M.H. testified they then moved to an apartment on Cleveland Avenue for approximately two months before it was shut down.  After that, M.H. was in a relationship with A.K. and did not live with appellant.

{¶ 5}  Appellant testified regarding his relationship with the children, his living arrangements, and his progress on his case plan with FCCS.  He testified that it had been several years since he had lived with M.H. and the children.  Appellant confirmed that he learned he was not the biological father of H.C. and D.C., Jr., and that he was only seeking custody of I.C.  Appellant testified that he participated in visitation with the children while they were under the custody of FCCS.  He stated that he completed a psychological evaluation and a parenting class as required under his case plan.  Appellant also met with

a parenting mentor.  Appellant testified that he did not have a problem with drugs or alcohol, but admitted that he had previously used cocaine and marijuana.  Appellant further testified that he had not completed the drug and alcohol treatment program required under his case plan.  He also testified regarding his residence history, indicating that he was living in a men's shelter, but that he was planning to move into an apartment within a few days.

{¶ 6}  The record indicates that at the end of the hearing, the juvenile court considered alternatives to granting permanent custody of I.C. to FCCS. FCCS expressed opposition to these alternatives.  Nevertheless, after much discussion, appellant's attorney made an oral motion to return I.C. to appellant.  Appellant committed to being available for FCCS to conduct a home visit, and to making whatever changes or improvements FCCS suggested after the visit.

{¶ 7}  After the hearing, the juvenile court issued an interim order that placed I.C. "on leave status with [appellant]" and recessed the motion for permanent custody to January 12, 2015. (Nov. 4, 2014 Judgment Entry.)  On November 6, 2014, the court issued a temporary order of custody of I.C. to appellant, which indicated that appellant and I.C. would be residing on Waverly Street until the January 12, 2015 hearing.

{¶ 8}  On November 19, 2014, FCCS filed a motion for shelter care and continuing jurisdiction, and to terminate the temporary order granting custody of I.C. to appellant. The motion alleged that the caseworker visited the Waverly Street address and found there to be no furniture in I.C.'s room.  Furthermore, appellant denied the caseworker access to the refrigerator and refused the food pantry referral the caseworker provided.  A female was present in the home, who was identified as the girlfriend of appellant's roommate.  The roommate had yet to present himself to FCCS for fingerprinting, as the court had previously ordered.  The motion indicated that the caseworker discussed these issues with appellant, and that appellant then indicated he was moving into his mother's home.  The caseworker arranged for a site visit to appellant's mother's home.  When the caseworker arrived for that visit, appellant's mother was not home and the man who answered the door indicated that he knew nothing of the arrangement.  Later that morning, appellant left a telephone message for the caseworker indicating that he was moving into his sister's home.

{¶ 9}  The juvenile court terminated the temporary order granting custody of I.C. to appellant and issued a temporary order granting custody to M.H.  The grant of temporary custody to M.H. was effective until December 3, 2014, unless the caseworker recommended against temporary custody after completing an investigation.  On December 2, 2014, the juvenile court issued another order granting temporary custody of I.C. to appellant, "effective when his residence passes inspection of [the FCCS caseworker]." (Dec. 2, 2014 Judgment Entry.)

{¶ 10} On January 29, 2015, the juvenile court issued an emergency care order that I.C. and H.C. be cared for temporarily during said emergency by FCCS.  On February 9, 2015, the court again granted temporary custody of I.C. and H.C. to M.H. on the condition that M.H. ensure that the children have adequate food and supervision, and that they be enrolled in and attend school.  The juvenile court held its final hearing on the motion for permanent custody on April 8, 2015.  The FCCS caseworker testified that I.C. had missed a total of 24 days of school between January 28 and April 8, 2015 while she was in the temporary custody of M.H.  At the end of the April 8, 2015 hearing, the court terminated the temporary order granting custody to M.H. and indicated that reasonable efforts had been made to prevent removing the children from the home.

{¶ 11} The juvenile court issued a judgment entry on July 6, 2015 awarding permanent custody of I.C., H.C., and D.C., Jr. to FCCS, finding that there was clear and convincing evidence to demonstrate that granting permanent custody to FCCS was in the best interest of the children.  The order terminated the parental rights of M.H. as to I.C., H.C., and D.C., Jr., and terminated the parental rights of appellant as to I.C.  The court denied the motion for permanent custody as to Da.K. and De.K., ordering that legal custody be granted to their father, A.K., and aunt, L.K.

{¶ 12} Appellant appeals from the juvenile court's judgment, assigning two errors for this court's review:

> I. THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY OF I.C. TO FRANKLIN COUNTY CHILDREN SERVICES IS NOT IN THE BEST INTERESTS OF THE CHILD AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

## II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLANT FAILED TO SUBSTANTIALLY COMPLETE HIS CASE PLAN.

{¶ 13} Although the juvenile court's order terminated M.H.'s parental rights with respect to I.C., H.C., and D.C., Jr., M.H. has not appealed the trial court's order. Appellant was only a party as to I.C., therefore our review is limited to the termination of appellant's parental rights as to I.C. and the grant of permanent custody of I.C. to FCCS. *See In re A.B.*, 10th Dist. No. 15AP-105, 2015-Ohio-3849, ¶ 23 ("Although the appellate brief filed on behalf of mother purports to represent an appeal from both mother and father, father was represented by separate counsel at trial and did not file a separate notice of appeal.  Thus, we will treat this appeal as pertaining to mother only.").

{¶ 14} The right to parent one's child is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16, of the Ohio Constitution.  *In re A.J.*, 10th Dist. No. 14AP-284, 2014-Ohio-5046, ¶ 18, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, and *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16.  However, the state possesses broad authority to intervene to protect children from abuse and neglect and may seek an award of permanent custody of a child, which terminates parental rights.  *See C.F.* at ¶ 28, citing R.C. 2151.01.  "Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children."  *In re Swisher*, 10th Dist. No. 02AP-1408, 2003-Ohio-5446, ¶ 26, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979).

{¶ 15} Under R.C. 2151.414(B)(1), a court may grant permanent custody of a child to an agency if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and one of certain specified factors set forth under the statute applies.  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 16} On appeal, we will not reverse a court's determination of a permanent custody motion unless it is against the manifest weight of the evidence. *In re M.E.V.*, 10th Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 10. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In conducting our review, every reasonable presumption must be made in favor of the trial court's findings of fact and judgment. *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Karches* at 19. Moreover, " '[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " *In re Hogle*, 10th Dist. No. 99AP-944 (June 27, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist.1994).

{¶ 17} We begin with appellant's second assignment of error, in which he argues that the juvenile court abused its discretion by finding that he failed to substantially complete his case plan. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). As explained above, in reviewing a juvenile court's decision on permanent custody, we must make every reasonable presumption in favor of the trial court's findings of fact and judgment. *Brooks* at ¶ 59.

{¶ 18} The caseworker testified at the hearing regarding appellant's progress on his case plan. She indicated that the parents, including appellant, participated in most of the semi-annual case review sessions. She also testified that appellant completed the psychological assessment required under his case plan. Based on that assessment, the caseworker recommended a parent-child observation, which appellant completed. Appellant also completed a recommended developmental disability parenting class. The caseworker testified that she believed appellant would ensure that his child was properly

supervised. She testified that when she had visited appellant's home in the past it was clean and that appellant was able to meet his own basic needs. Ultimately, the caseworker opined that appellant had substantially complied with most of his case plan. Based on this testimony, appellant argues that the trial court erred by concluding that he failed to substantially complete his case plan.

{¶ 19} In addition to testifying that appellant had substantially complied with "most" of his case plan, the caseworker testified regarding her concerns with appellant:

> The concerns are the positive urine screens for the drugs and alcohol and then the current concern right now is -- is housing. There's been a significant period of time that he hasn't had housing and prior to that he -- he did have housing for, you know, over a year but before that there was not a -- a long history of him having stable housing.

(Oct. 29, 2104 Tr. 199.) The caseworker testified that appellant had previously tested positive for cocaine and marijuana. She testified that she met appellant on occasion when he smelled of alcohol. Furthermore, the caseworker testified that appellant had failed to consistently pass drug and alcohol tests, which she had requested of him throughout the life of the case.[1] Appellant completed a drug and alcohol assessment, as required by his case plan, but did not complete the recommended treatment program. The caseworker testified that she referred appellant to a second treatment program, which he also failed to complete. Appellant admitted to multiple positive drug tests for cocaine, but claimed he only used the drug once. Appellant also admitted to prior use of marijuana; he claimed that he used it for treatment of glaucoma under a prescription obtained from a doctor in Michigan. Appellant admitted that he was expelled from the initial drug treatment program.

{¶ 20} There was also evidence that appellant did not have a recent record of stable housing. M.H. testified that she and appellant lived in several different apartments while they were together, including one apartment for approximately one month and another for approximately two months. Appellant's testimony suggested that after the end of his relationship with M.H. in December 2011, he lived in a home on Whittier Street for an extended period of time until March 2014, however the testimony was unclear as to

---

[1] FCCS originally filed its motion for permanent custody of I.C. on October 19, 2012.

exactly how long appellant lived at that address. Immediately prior to the hearing, appellant lived with his sister for a brief period and then moved into a men's shelter. Appellant asserted that he was going to get a one-bedroom apartment on November 1, 2014. When the caseworker attempted to verify appellant's new residence, she was unable to locate the address and appellant was unresponsive to her efforts to contact him. Appellant subsequently claimed he was sharing an apartment with a roommate at a different address.

{¶ 21} Based on our review of the record, there is evidence that appellant complied with some portions of his case plan, including certain assessments and classes. However, there was also evidence demonstrating that appellant failed to comply with other portions of the case plan, particularly with respect to drug and alcohol treatment. Giving appropriate deference to the trial court's findings of fact and judgment, we cannot conclude that the trial court abused its discretion by finding that appellant failed to substantially complete his case plan.

{¶ 22} Accordingly, we overrule appellant's second assignment of error.

{¶ 23} In his first assignment of error, appellant argues that granting permanent custody of I.C. to FCCS was not in her best interest and that the juvenile court's decision was not supported by clear and convincing evidence.

{¶ 24} As relevant to this case, one of the statutory factors that will permit the court to grant permanent custody to an agency is whether "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d). The juvenile court concluded that this factor was present, finding that I.C. had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the filing of the permanent custody motion. The caseworker testified that FCCS was granted temporary custody of I.C. on May 24, 2010. She further testified that I.C. was removed from M.H.'s home on August 1, 2011, and that, when the hearing began, I.C. had been in continuous alternative care since that date. Thus, there was competent, credible evidence to support the juvenile court's conclusion that the factor set forth under R.C. 2151.414(B)(1)(d) was satisfied. In his brief on appeal, appellant does not contest this finding. Accordingly, we will focus on whether there was competent,

credible evidence to support the court's conclusion that granting permanent custody to FCCS was in I.C.'s best interest.

{¶ 25} In determining whether a grant of permanent custody to an agency is in a child's best interest, R.C. 2151.414 sets forth a non-exhaustive list of factors the court must consider:

> (D) (1)  In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 26} The juvenile court considered each of these factors with respect to I.C. and her siblings, and concluded that an award of permanent custody to FCCS was in I.C.'s best

interest.  Appellant argues that the trial court's decision was not supported by clear and convincing evidence.

{¶ 27} With respect to the first factor set forth in the statute, the juvenile court concluded that I.C., and the other children, were bonded with their parents, their foster parents, and with each other.  The court also found that there were some bonds with other relatives.  This conclusion is consistent with the testimony presented.  The caseworker testified that appellant was bonded with I.C., and that I.C. was bonded with appellant.  The GAL stated that the children were bonded with M.H. and with their foster parents; he also testified that he had not observed I.C. with appellant.  As to the second factor, the juvenile court concluded that I.C. wished to live with a parent.  This conclusion was consistent with the GAL's testimony that I.C., who was seven years old at the time of the proceedings, expressed a desire to live with either appellant or her grandmother.  However, we note that the GAL also testified that he supported the motion to grant permanent custody of I.C. to FCCS.

{¶ 28} In considering the third factor, the juvenile court concluded that I.C. was in the custody of FCCS for 12 or more months within a 22-month period.  As noted above, this was consistent with the caseworker's testimony and appellant concedes that this factor was present.  With respect to the fifth factor set forth in R.C. 2151.414(D)(1), the juvenile court concluded that none of the factors in R.C. 2151.414(E)(7) through (10) applied to the children, but that the factor set forth in R.C. 2151.414(E)(11) applied to M.H., because she previously had parental rights involuntarily terminated with respect to a sibling of the children.  The court did not make a finding as to whether any of these factors applied to appellant.

{¶ 29} Appellant's argument largely turns on the juvenile court's analysis of the fourth factor—i.e., whether a legally secure permanent placement could be achieved without granting permanent custody of I.C. to FCCS.  The juvenile court concluded that appellant and M.H. were unable to meet the custodial needs of the children.  The court found that the conditions in M.H.'s home "historically have been deplorable," noting evidence of extreme clutter and filth in the home, as well as roach infestation and the presence of feces and urine soaked clothing and carpeting. (July 6, 2015 Judgment Entry, 2.)  The court noted that appellant's record of maintaining stable housing was sporadic

and unpredictable, that he was unlikely to be able to meet I.C.'s custodial needs, and that he lacked an adequate and reliable family support system necessary to maintain himself as a custodial parent. The court further found that "[a]dditional casework would only prolong the inevitable termination of parental rights and delay the children receiving a stable, secure and nurturing permanent custodial placement for adoption." (July 6, 2015 Judgment Entry, 3.) Based on these findings, the court concluded that a legally secure placement for I.C. could not be achieved without a grant of permanent custody to FCCS.

{¶ 30} FCCS has the burden to prove that granting permanent custody is in the child's "best interest" by clear and convincing evidence. Clear and convincing evidence " 'is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.' " *In re T.V.*, 10th Dist. No. 04AP-1159, 2005-Ohio-4280, ¶ 50, quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986). Clear and convincing evidence " 'does not mean clear and unequivocal.' " *Id.* As noted above, we review the juvenile court's decision to determine whether there was competent, credible evidence to support the decision. *M.E.V.* at ¶ 10.

{¶ 31} In the end, considering the court's final efforts to pursue an alternative to granting FCCS's motion for permanent custody and the results of those efforts, we conclude there was competent, credible evidence to support the juvenile court's conclusion regarding the fourth factor. As discussed above with regard to the second assignment of error, the caseworker testified that there were concerns about appellant's residence history, as well as his drug and alcohol use. Appellant failed to complete the drug and alcohol treatment program required under his case plan. The caseworker also testified that there were times when appellant would help clean and improve the conditions in M.H.'s home, but then leave the children under her care despite knowing that the unsanitary conditions were likely to recur. This caused the caseworker to have concerns about whether appellant could provide appropriate supervision of the children. Testimony from the caseworker, M.H., and appellant suggested that appellant had difficulty retaining stable housing. Appellant testified that he was living at a men's shelter when the proceedings began, and the caseworker was unable to verify his claim that he would soon move into an apartment. Furthermore, when the court granted appellant temporary custody of I.C. on November 6, 2014, FCCS's investigation of the home on

Waverly Street and subsequently of appellant's mother's home revealed that he did not have appropriate housing for I.C.

{¶ 32} This court has previously concluded that a parent's failure to maintain stable housing may weigh in favor of granting permanent custody to the agency to ensure that a child has a legally secure permanent placement. *See In re J.M.*, 10th Dist. No. 15AP-234, 2015-Ohio-3988, ¶ 16. In *J.M.*, the trial court found that a legally secure permanent placement could not be achieved without granting custody to the agency, because the mother had not maintained stable housing without eviction. *Id.* at ¶ 9. This court found that the record supported the trial court's conclusion, noting the following evidence:

> [A]t the time of the end of the hearing, [mother] was living in temporary housing and was not permitted to have the children live with or visit her. In the months between the hearing dates, [mother] stayed with friends and relatives. Before the hearing, [mother] lived in a number of places and was incarcerated part of the time. The only independent housing indicated was the home from which the children were originally removed, which [mother] no longer has access to.

*Id.* at ¶16. Likewise, a history of drug use by a parent may also weigh in favor of granting permanent custody to the agency. *See In re K.M.*, 10th Dist. No. 15AP-64, 2015-Ohio-4682, ¶ 29 ("Mother asserts that the children could have legally secure placement with her, as she substantially complied with her second case plan. Although mother did complete several aspects of her case plan, she has never successfully completed an alcohol and drug treatment program or maintained a sustained period of sobriety."); *In re R.G.*, 10th Dist. No. 12AP-748, 2013-Ohio-914, ¶ 22 ("Viewing all of the evidence presented on whether R.G. is in need of a legally secure placement under R.C. 2151.414(D)(1)(d), we believe the evidence weighs more in favor of finding the need exists. Mother's housing stability was unclear at the time of trial, she had experienced drug issues in the past coupled with approximately 80 missed drug screens since 2010, and she failed to complete a domestic violence assessment, which was significant given her past abuse involving R.G.'s father and the currently volatile relationship with M.C.").

{¶ 33} Having reviewed the record, including the evidence and testimony presented to the juvenile court, we conclude that there was competent, credible evidence

to support the juvenile court's conclusion that granting permanent custody to FCCS was in I.C.'s best interest.  Therefore, the juvenile court's decision was not against the manifest weight of the evidence.  Accordingly, we overrule appellant's first assignment of error.

{¶ 34} For the foregoing reasons, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

LUPER SCHUSTER and HORTON, JJ., concur.