OPINION
{¶ 1} Appellant, E.V., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, to grant permanent custody of her two daughters ("J.J." and M.S.") to the Butler County Children's Services Board ("BCCSB").
 {¶ 2} Appellant's two daughters were removed from her care in April 2003. Both children were removed from failed relative placements and placed into the temporary custody of BCCSB in July and August 2003, respectively. J.J., born on May 30, 1992, and M.S., born on October 22, 1998, were adjudicated dependent, abused, and neglected children by agreement in July 2004. "James", appellant's live-in boyfriend of several years and M.S.'s alleged father, was named as the perpetrator of abuse on the children and appellant was found to have neglected the children.[1]
 {¶ 3} BCCSB moved for permanent custody in December 2004. Hearings were held before a magistrate, who issued a decision granting permanent custody in 2005. The juvenile court subsequently overruled appellant's objections and adopted the magistrate's decision. Appellant instituted the instant appeal, presenting two assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING HEARSAY AND OTHER INADMISSIBLE EVIDENCE CONCERNING HIGHLY PREJUDICIAL AND INFLAMMATORY MATTERS."
 {¶ 6} The Ohio Rules of Evidence apply to hearings on motions for permanent custody. In re Mack, 148 Ohio App.3d 626,2002-Ohio-4161, at ¶ 9; Juv.R. 34(I).
 {¶ 7} First, we note that appellant objected to the admission of evidence on one or more occasions during the trial and those objections were sustained. However, on the issues set forth by appellant for this appeal, she concedes that no objections were made.
 {¶ 8} Failing to draw the trial court's attention to a possible error, by objection or otherwise, where the error could have been corrected, results in a waiver of the issue for purposes of appeal, unless we find plain error. In reEbenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, at ¶ 9-11; In re McLemore, Franklin App. Nos. 03AP-714, 03AP-730,2004-Ohio-680, ¶ 11.
 {¶ 9} Plain error is applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. In re McCann, Clermont App. No. CA2003-02-017, 2004-Ohio-283, ¶ 44; Goldfuss v. Davidson,79 Ohio St.3d 116, syllabus, 1997-Ohio-401; c.f., State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68 (plain error exists where there is an obvious deviation from a legal rule which affected appellant's substantial rights, or influenced the outcome of the proceeding).
 {¶ 10} It is also important to note that the pertinent parties to this case, represented by counsel, entered into an agreed adjudication of dependency, neglect and abuse and the initial disposition. The parties agreed to submit certain evidence and to permit the juvenile court to make its findings based upon that evidence. Neither appellant, nor any other party appealed the juvenile court's determination of adjudication and disposition, and those findings are part of the record in this case. See, e.g., In re H.M.S., Franklin App. No. 05AP-613, 2006-Ohio-701, ¶ 8.
 {¶ 11} Appellant first argues that the juvenile court erred in permitting the prosecutor to call appellant and cross-examine her about certain matters when, she argues, no evidence was ultimately presented by BCCSB to corroborate the accusations implied by the questions.
 {¶ 12} It is improper to attempt to prove a case by insinuation or innuendo, rather than with evidence. In reH.M.S. at ¶ 7. Questions that are not based on fact or for which there is no good-faith basis are improper. Id. It is sufficient if there is a good-faith basis to question the witness on the subject and where the good-faith basis for a question is not challenged at the trial level, it is presumed that such a basis exists. Id.
 {¶ 13} Where a trial judge acts as the fact finder, it is presumed that the judge is capable of disregarding improper testimony. In re Boylan (Jan. 26, 1998), Butler App. No. CA97-04-088. Therefore, unless it appears that the lower court actually relied on the improper testimony in reaching its judgment, a reviewing court should be reluctant to overturn the juvenile court's judgment on a permanent custody issue on the basis of the admission of inadmissible testimony. Id.
 {¶ 14} We have reviewed the record of this case, including the exhibits, previous evidence of which the parties agreed the juvenile court should take judicial notice, and the written decision of the juvenile court. Along with the presumption that a good-faith basis existed to pose the questions, the record also provides support for the issues raised by the prosecutor's questions. We will presume that the juvenile court disregarded the questions that may not have been supported by the record.
 {¶ 15} While the prosecutor's use of cross-examination was not particularly effective in this case, we will not find that the juvenile court committed plain error in permitting this type of cross-examination.
 {¶ 16} For ease of discussion, we will address some of appellant's remaining arguments out of order.
 {¶ 17} Appellant asserts that the juvenile court committed error in permitting hearsay testimony concerning the results of appellant's drug tests.
 {¶ 18} Hearsay is defined in the rules as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C); see State v. Nitz, Butler App. No. CA2003-09-228, 2004-Ohio-6478, ¶ 16. Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802.
 {¶ 19} A lower court's reliance on inadmissible hearsay in its judgment is reversible error. See In re T.V., Franklin App. Nos. 04AP-1159, 04AP-1160, 2005-Ohio-4280, ¶ 575-8 (inadmissible hearsay testimony is grounds for reversal only if juvenile court relied upon it to terminate parental rights); In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968, at ¶ 79 (must be shown that juvenile court actually relied upon this evidence in its judgment; erroneous admission of evidence is harmless if other evidence apart from inadmissible evidence was offered to prove that which the challenged evidence was offered to prove); In reMcKenzie (Oct. 24, 1994), Stark App. No. CA94-0011; In reMcLemore, 2004-Ohio-680.
 {¶ 20} With this argument, appellant is presumably referring to the testimony of the BCCSB caseworker who testified that appellant tested positive for cocaine while undergoing intensive outpatient therapy at a substance abuse treatment center.
 {¶ 21} Clearly, the testimony of the caseworker concerning the results of urine screens is inadmissible hearsay. See In reT.V., 2005-Ohio-4280 at ¶ 57-58. However, included in the record is a written report on appellant that evidences a positive drug screen for cocaine.[2] We also note that the caseworker testified that when she questioned appellant about twice testing positive for cocaine, appellant reportedly stated the first time that the positive result may have been from a mix-up with her sister's test. For the second positive screen, appellant explained that a grandchild must have slipped something into appellant's cola. See Evid.R. 801(D)(2) (admissions of party opponent are not hearsay).
 {¶ 22} Therefore, the juvenile court did not need to rely on the caseworker's testimony to make the finding that appellant tested positive for cocaine during her substance abuse treatment.In re M.H.
 {¶ 23} Appellant also takes issue with the juvenile court's finding, based upon the caseworker's testimony, that appellant arrived late or fell asleep during her substance abuse treatment.
 {¶ 24} The trier of fact could have drawn a reasonable inference from a Sojourner treatment plan contained in the record that appellant had issues with tardiness and tiredness, as well as diluted urine samples. While the caseworker's testimony on this issue again is impermissible hearsay, there was some evidence in the record that there were issues in treatment and, based upon the presumption that the juvenile court would disregard the impermissible evidence and rely on permissible evidence, we will not find plain error in this regard.
 {¶ 25} Appellant next challenges the trial court's admission of evidence concerning appellant's visits with her daughters. The caseworker was able to testify that she witnessed appellant discussing the case in front of her children and witnessed appellant's tendency to spend time talking with the visit supervisor instead of interacting with her children.
 {¶ 26} We agree that the testimony of the foster mother and caseworker regarding what the children told them that appellant was telling them was inadmissible hearsay, without an apparent applicable hearsay exception. See Evid.R. 803. However, we find other competent evidence in the record regarding appellant's conduct while visiting her children. No plain error is found.
 {¶ 27} Appellant also argues that the juvenile court erred in allowing non-expert hearsay testimony concerning appellant's psychological diagnosis of anti-social personality disorder.
 {¶ 28} A licensed independent social worker from Catholic Social Services testified in BCCSB's case that appellant was participating in group and individual therapy with the adult abuse awareness group. The social worker was qualified as an expert witness in therapy by the juvenile court. The social worker testified about appellant's behavior in therapy and discussed her initial diagnosis that appellant had an adjustment disorder.
 {¶ 29} The social worker also testified that she began to see certain traits of anti-social personality disorder from appellant. The social worker indicated that there is no known treatment for such a disorder. The social worker testified that individuals with anti-social personality disorders often tell lies, are inclined to commit crimes, do not show remorse, and do not display empathy toward others. The social worker testified that the traits exhibited by appellant would significantly affect her relationship with her children.
 {¶ 30} The social worker indicated that during the group sessions, she "did not hear a lot of empathy" from appellant for her children and the other children who had suffered abuse in her home. Appellant told the social worker that she allowed her boyfriend, James, to remove one of her children from her room so that she could catch him molesting the child. The social worker testified that appellant was confronted in group therapy about appellant's statement that she had previously warned James not to wake the girls in the middle of the night and touch them, but appellant indicated that the group misunderstood her, that she was referring to James hitting her children, and was not admitting that she knew sexual abuse was occurring.
 {¶ 31} The social worker indicated that she felt that appellant was increasingly inappropriate for the groups offered by her agency and she recommended that appellant should receive a psychological evaluation elsewhere to take a "closer look" at the anti-social personality disorder.
 {¶ 32} The social worker was properly qualified and permitted to testify as an expert in therapy and she provided pertinent evidence of appellant's conduct in therapy. The juvenile court erroneously couched its finding regarding the anti-social disorder personality traits as a formal diagnosis. However, when reviewing the record as a whole and, given the extensive discussion of appellant's highly pertinent behavior within the group therapy setting, we do not find plain error.
 {¶ 33} Appellant next argues that the juvenile court erred in finding that appellant displayed a lack of parental care for her children in regard to feeding them and having food available for them. Both the BCCSB worker and foster mother testified that the children told them that appellant would not provide food for them even though appellant was working, and that they had to obtain meals daily from a local charity. The testimony by both the foster mother and caseworker was inadmissible hearsay.
 {¶ 34} Again, we must determine whether the admission of this evidence constitutes plain error.
 {¶ 35} Further, appellant argues that this and cumulative errors on the admission of evidence would also warrant a reversal of the juvenile court's decision.
 {¶ 36} We are deeply troubled by BCCSB's repeated submission of hearsay evidence at the trial, whether it was relied upon or not. However, for the reasons we will outline more fully below, we cannot agree that any of the assigned error or errors would necessitate a reversal of the finding of permanent custody in the case at bar.
 {¶ 37} The juvenile court found that it was in the best interests of the two children to be placed in the permanent custody of BCCSB. We find that competent credible evidence supports the juvenile court's finding by clear and convincing evidence that the children's best interests are served by a grant of permanent custody. See R.C. 2151.414(B) and (D). We will review those statutory factors in relation to the evidence in the instant case.
 {¶ 38} The children's interaction and relationship with appellant is reportedly problematic. See R.C. 2151.414(D)(1). Appellant played a predominant role in exposing her children to the trauma of sexual abuse, domestic violence, and physical abuse. Appellant cannot deflect responsibility for her active participation in some of the violence against her children. Additionally, appellant did not adequately protect her children, and she continues to expend her energies toward defending her actions and denying any role she may have played, rather than placing her children's interests before her own.
 {¶ 39} On the other hand, evidence was presented that the children are attached to appellant and many visits had been appropriate. However, appellant's behavior at other visits was not appropriate, and the children reportedly acted out at the foster home and at school when appellant missed a visit or shortened visits.
 {¶ 40} The foster mother reported on one occasion that appellant left a visit early, telling the foster mother that she was leaving because she was upset that the "conniving liars" were telling untruths about her. The foster mother testified that she understood that appellant was referring to her two daughters as the liars.
 {¶ 41} The foster mother also testified that appellant "reeked" of alcohol when the foster mother talked with appellant at an unplanned encounter in the Middletown area. It was noted by the caseworker that appellant has not followed through with all of the case plan objectives for substance abuse issues.
 {¶ 42} The foster mother also testified that M.S. needs constant reassurance that she is safe and both children exhibit strong emotional reactions when a loud tone of voice is used by adults, such as their teachers. The foster mother indicated that J.J. has had frequent episodes of rage, but the foster parents have worked with J.J. to help her manage her responses more appropriately.
 {¶ 43} The children reportedly have formed a bond with their foster family, with whom they have been placed since they were removed from failed relative placements in the summer of 2003. The evidence shows that the foster parents have given these children the protection and stability they have lacked, and have provided for the children's special physical, mental, medical, therapeutic and educational needs. The foster family is also the foster home for relatives of the children who were living with appellant and the children before removal. The foster parents have indicated that they would be willing to adopt these two children, if applicable. See R.C. 2151.414(D)(1).
 {¶ 44} The juvenile court conducted an in-camera discussion with the children, upon appellant's motion and with the apparent agreement of the parties. The juvenile court stated that it would hold the in-camera session for the purpose of judging whether the children possessed sufficient maturity to adequately express their wishes and desires as to placement and to hear those wishes and desires if it so determined that the children were capable of doing so. We have reviewed this in-camera hearing. See R.C.2151.414(D)(2).
 {¶ 45} The children's guardian ad litem supports the grant of permanent custody to BCCSB, but the children's attorney, stating that he was advocating for his clients, asked that permanent custody not be granted to BCCSB. R.C. 2151.414(D)(2).
 {¶ 46} BCCSB has reportedly been involved with appellant's family in some capacity since the mid 1990s. Relative placements utilized immediately after the children were removed from appellant failed when the custodians had issues that adversely affected the children's interests. BCCSB has held the children in temporary custody since the summer of 2003 in the same foster home. The children have been in the custody of BCCSB for 12 or more months of a consecutive 22-month period. See R.C.2151.414(D)(3).
 {¶ 47} The children have endured multiple years of trauma related to abuse, violence, and neglect issues. The children have special emotional, behavioral, educational and physical needs that must be conscientiously monitored and addressed. These children need a legally secure permanent placement that cannot be achieved without a grant of permanent custody to BCCSB. See R.C.2151.414(D)(4).
 {¶ 48} James, the alleged father of M.S., was found guilty of five sexual offenses perpetrated against one of the children, or a sibling, or children who lived in the same residence as the children. R.C. 2151.414(D)(5); R.C. 2151.414(E)(7).
 {¶ 49} The juvenile court also made two separate findings on the second part of the two-part determination it must make in deciding a permanent custody motion. See R.C. 2151.414. See Inre Ebenschweiger, 2003-Ohio-5990 at ¶ 12 (before juvenile court can terminate parental rights and award permanent custody of the child to an agency, it must satisfy two statutory factors by clear and convincing evidence: [1] that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on the factors of R.C. 2151.414[E]; and [2] the grant of permanent custody to the agency is in the best interest of the child).
 {¶ 50} The juvenile court found both that the children had been in the temporary custody of BCCSB for 12 of 22 consecutive months before the motion for permanent custody was filed, and that the children could not and should not be placed in appellant's custody within a reasonable period of time.
 {¶ 51} After the juvenile court found that appellant's daughters had been in the temporary custody of BCCSB for more than 12 months of a continuous 22-month period, it was unnecessary for the juvenile court to determine whether the children could or should be placed with appellant within a reasonable period of time. In re A.F., Butler App. No. CA2005-05-131, 2005-Ohio-5049, ¶ 10-11(even though the juvenile court addressed other factors under R.C. 2151.414[B][1], it was unnecessary for resolution of the case once it was established that child was in agency's temporary custody for [24] months; appellate court just left to review whether there was clear and convincing evidence that grant of permanent custody was in the child's best interest); In re S.M., Franklin App. No. 05AP1-262, 2006-Ohio-2529, ¶ 12; In re Sunderman, Stark App. No. 2004CA00093, 2004-Ohio-4608, ¶ 48 (findings made under R.C.2151.414[B][1][a] and [B][1][d] are in the alternative; either will support a grant of permanent custody); see, also, In reKatrina T., Sandusky App. No. S-03-024, 2004-Ohio-3164, at ¶13-14.
 {¶ 52} Appellant's progress toward completion of her case plan is relevant only in determining whether her daughters could or should be placed with her within a reasonable period of time. See R.C. 2151.414(B)(1)(a); In re S.M. at ¶ 12. Therefore, the trial court did not need to address appellant's compliance with her case plan in its analysis. Id.; In re Sunderman at ¶ 48.
 {¶ 53} Without the use of any hearsay, there is clear and convincing evidence in the record to support the finding that permanent custody is in the best interests of the children, and, further, that the children have been in the temporary custody of BCCSB for 12 months of a consecutive 22-month period. We do not find plain error on any of the issues presented by appellant under her first assignment of error. The result of the hearing would not have been different, but for the alleged errors.
 {¶ 54} The juvenile court did not err in its determination that the evidence supported the grant of permanent custody of these two children to BCCSB. Appellant's first assignment of error is overruled.
 {¶ 55} Assignment of Error No. 2:
 {¶ 56} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER ATTORNEY FAILED TO OBJECT TO THE INTRODUCTION OF NUMEROUS HEARSAY STATEMENTS AND OTHER IMPROPER EVIDENCE."
 {¶ 57} Because parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel, applies to permanent custody hearings. In re Heston (1998), 129 Ohio App.3d 825, 827. When determining whether counsel was ineffective, the court must apply the two-tier test of Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance, and she must show that she was prejudiced as a result of counsel's actions. Id. at 689.
 {¶ 58} Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, syllabus. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. In re Spillman, Clinton App. No. CA2002-06-028, 2003-Ohio-713, ¶ 8.
 {¶ 59} We cannot condone the failure to object to the admission of hearsay evidence. However, we also cannot say that, but for the errors, there was a reasonable probability that the result of the trial would have been different. Accordingly, appellant's second assignment of error is overruled.
 {¶ 60} Judgment affirmed.
Walsh and Young, JJ., concur.
[1] Appellant's boyfriend, James, was convicted of multiple felonies related to the sexual abuse of the children residing in or visiting the home where he and appellant lived.
[2] We note that there is only one laboratory report in the record.