OPINION
{¶ 1} Appellants, Toni and Ronald J., appeal a decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of their children to appellee, the Preble County Job and Family Services, Children Services Division ("the agency").
 {¶ 2} Toni and Ronald J. ("Mother" and "Father") are the biological parents of the three minor children who are the subject of this case. T.J., the oldest child, was born on *Page 2 
October 13, 2001. The second child, Z.J., was born on August 28, 2003. The youngest child, K.J., was born on November 13, 2006.
 {¶ 3} The agency first became involved with the family in mid 2006, when Mother and Father had only two children. On July 24, 2006, the agency obtained emergency temporary custody of T. J. and Z.J. after the children were found to be living in unsanitary and unsafe conditions. There were concerns that Mother's mental health issues contributed to the deplorable living conditions. The next day, the agency filed a complaint alleging that T. J. and Z.J. were dependent children and/or children without proper parental care. Following a shelter care hearing, the juvenile court awarded temporary custody of T.J. and Z.J. to the agency.
 {¶ 4} In August 2006, the agency implemented a case plan for reunifying T.J. and Z.J. with their parents. The plan required Mother and Father to undergo psychological evaluations and follow all recommendations resulting from the evaluations, to complete parenting classes, and to provide a safe and stable home environment for the children. Mother was also required to obtain individual counseling and follow all recommendations from her therapist.
 {¶ 5} On October 23, 2006, T.J. and Z.J. were adjudicated dependent after Mother and Father admitted to the dependency allegations in the complaint. The juvenile court dismissed the allegations that the children were without proper parental care. Following a disposition hearing on December 11, 2006, the court ordered that T.J. and Z.J. remain in the temporary custody of the agency.
 {¶ 6} The agency was granted protective supervision over K.J. shortly after her birth. On November 17, 2006, the agency filed a complaint alleging that K.J. was a dependent child. Following a shelter care hearing, the juvenile court awarded temporary custody of K.J. to the agency. On December 12, 2006, K.J. was adjudicated dependent after Mother and *Page 3 
Father admitted to the dependency allegations in the complaint. A disposition order issued that same day ordered that K.J. remain in the temporary custody of the agency.
 {¶ 7} On January 31, 2008, the agency moved for permanent custody of all three children. The motion alleged that granting permanent custody to the agency was in the children's best interest, that the children had been in the agency's custody for more than 12 months of the preceding 22-month period, and that the children could not be placed with either parent within a reasonable time or should not be placed with the parents. Following a series of hearings, the juvenile court granted the agency's motion for permanent custody in a decision rendered on September 4, 2008. Mother and Father timely appeal the juvenile court's decision, advancing two assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURTS [sic] DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Mother and Father dispute the juvenile court's finding that the children could not be placed with either parent within a reasonable time, emphasizing Mother's progress in caring for herself and her home. Mother and Father also dispute the juvenile court's finding that awarding permanent custody to the agency was in the best interest of the children, highlighting the bond between Mother and T.J. and Z.J.
 {¶ 11} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer
(1982), 455 U.S. 745, 759, 102 S.Ct. 1388. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. *Page 4 
 {¶ 12} Appellate review of a juvenile court's decision granting permanent custody is limited to whether competent and credible evidence exists to support the juvenile court's determination. In reStarkey, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510, 519-20.
 {¶ 13} R.C. 2151.414(B)(1) requires the juvenile court to apply a two-pronged test when determining whether to terminate parental rights and award permanent custody to a public or private children services agency. Specifically, the juvenile court must find that the following two elements are supported by clear and convincing evidence: (1) the grant of permanent custody to the agency is in the best interest of the child, and (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c), and (d). See, also, In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36.
 {¶ 14} Once a juvenile court determines that a child has been in the custody of the agency for 12 of 22 consecutive months in accordance with R.C. 2151.414(B)(1)(d) (the "`12 of 22' finding"), the court may move on to the best interest analysis. Cf. In re L.D., Clinton App. No. CA2004-03-007, 2004-Ohio-4000, ¶ 15. This is because the findings contained in R.C. 2151.414(B)(1)(a), (b), (c), and (d) are alternative findings. In re Sunderman, Stark App. No. 2004CA00093, 2004-Ohio-4608, ¶ 48. Only one of these four findings must be met in order to fulfill the second prong of the permanent custody test. Id. As a result, once the "`12 of 22' finding" is made, it is unnecessary for a juvenile court to determine whether the children could or should be placed with the parents within a reasonable period of time. In re *Page 5 D.B., Butler App. No. CA2007-05-135, 2007-Ohio-5391, ¶ 18, citing In reJ.J., Butler App. No. CA2005-12-525, 2006-Ohio-2999, ¶ 51.
 {¶ 15} In the case at bar, the juvenile court found by clear and convincing evidence, and Mother and Father do not dispute, that all three children had been in the custody of the agency for at least 12 of 22 consecutive months. We determine that the record supports this finding.
 {¶ 16} For purposes of R.C. 2151.414(B)(1), a child is considered to have entered the temporary custody of the agency "on the earlier of the date the child is adjudicated * * * or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1). T.J. and Z.J. were removed from home on July 24, 2006 and adjudicated dependent on October 23, 2006. Thus, for purposes of R.C. 2151.414(B)(1), T.J. and Z.J. entered the temporary custody of the agency on September 22, 2006 (60 days after the removal date of July 24, 2006). At the time the agency moved for permanent custody on January 31, 2008, T.J. and Z.J. had been in the temporary custody of the agency for approximately 16 consecutive months. This supports the juvenile court's "`12 of 22' finding" regarding T.J. and Z.J.
 {¶ 17} The record likewise supports the juvenile court's "`12 of 22' finding" regarding K.J. That child was removed from the home on November 30, 2006 and adjudicated dependent on December 12, 2006. Utilizing the adjudication date, the calculations indicate that K.J. was in the temporary custody of the agency for over 13 consecutive months at the time the agency moved for permanent custody.
 {¶ 18} It appears that the juvenile court may have utilized some incorrect dates in computing its calculations for the "`12 of 22' finding." If so, any error was harmless in light of the fact that the record supports that all three children had been in the agency's custody for at least 12 of 22 consecutive months. In re C.G., Preble App. Nos. CA2007-03-005,-006, 2007-Ohio-4361, ¶ 33. The juvenile court thus properly determined, by clear and convincing *Page 6 
evidence, that T.J., Z.J., and K.J. had been in the agency's custody for the requisite period of time under R.C. 2151.414(B)(1)(d).
 {¶ 19} In view of the fact that only one of the alternative findings under R.C. 2151.414(B)(1)(a), (b), (c), and (d) must be met, the juvenile court's "`12 of 22' finding" satisfied the second prong of the permanent custody test. The court was therefore not obligated to determine whether the children could or should be placed with the parents under R.C. 2151.414(B)(1)(a), and we need not address Mother and Father's argument challenging that extraneous finding. In re R.L., Franklin App. No. 07AP-36, 2007-Ohio-3553, ¶ 11.
 {¶ 20} Next we consider whether there was competent and credible evidence to support the juvenile court's finding that granting permanent custody to the agency was in the best interest of each of the children. In making the best interest determination, R.C. 2151.414(D) requires the juvenile court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) to (11) are applicable. R.C. 2151.414(D)(1), (2), (3), (4), and (5).[1]
 {¶ 21} In challenging the juvenile court's best interest determination, Mother and Father specifically contest only the court's finding that no significant bonding exists between them and the children. This appears to amount to an argument that the first best interest *Page 7 
factor, the interaction and interrelationship of the children with their parents, was not properly evaluated by the juvenile court. See R.C. 2151.414(D)(1).
 {¶ 22} With respect to Father, the juvenile court concluded that Father had no appropriate interaction or bonding with any of the three children. According to the facts in the record, Father is an "over the road" truck driver who is only home two out of every 14 days. Father thus does not have much contact with the children. The juvenile court observed that Father's demeanor at the hearing "was one of almost complete detachment from the proceedings, playing with his hat, looking down, playing with a piece of paper, never engaged with any interest in the proceedings."
 {¶ 23} Mr. Eckart Wallisch, a psychology assistant with CDC Mental Health Services, conducted a parenting assessment with the family in late 2007. Wallisch noted that although Father attempted to engage the children during the assessment, T.J. and Z.J. were largely indifferent towards him (K.J. was not present at the assessment). T.J. was even hostile towards Father at times. Throughout the assessment, Wallisch observed, Father showed little affection towards the children. Wallisch testified that he did not see much evidence that the children were bonded with Father.
 {¶ 24} Jayne Jacklin, a caseworker with the agency, also testified regarding the lack of bonding between the children and Father. The juvenile court also considered the testimony of Dr. William Walters, a consultant for CDC Mental Health Services who conducted psychological evaluations of Mother and Father in late 2007. Dr. Walters testified regarding his concerns with Father's distant and unaffectionate personality.
 {¶ 25} With respect to Mother, the juvenile court concluded that Mother was bonded with T.J. and Z.J., but in a sisterly manner. Wallisch, after conducting his parenting assessment, described Mother as bonded with T.J. and Z.J. Caseworker Jacklin also acknowledged that Mother was bonded with T.J. and Z.J., but stated that their weekly visits *Page 8 
with Mother were strained more often than not. Jacklin testified that Mother admitted it was not in the best interest of each of the children to remain with her. Jacklin opined that T. J. and Z.J. were very bonded with their foster caregivers, and with the biological daughter of their caregivers. Their foster mother testified that she did not see T.J. and Mother as bonded. She also testified that Mother did not display interest in T.J.'s schooling and, rather than discussing T.J., Mother would discuss subjects such as her own health.
 {¶ 26} The juvenile court concluded that Mother was not significantly bonded with K.J., noting that Mother acknowledged her inability to parent K.J. or address K.J.'s special needs. Mother testified that she was willing to give up permanent custody of K.J. because she did not believe she would ever be able to care for K.J. K.J.'s foster caregivers[2] testified that K.J. was very bonded with them and their other children. This was echoed by caseworker Jacklin. Jacklin also testified that K.J. did not recognize Mother as her natural parent.
 {¶ 27} After reviewing the record, we conclude that the juvenile court properly evaluated the interaction and interrelationship of the children with their natural parents as well as their foster families. The court's findings on the interaction and interrelationship of the children with their parents and foster families were supported by competent and credible evidence. Starkey, 2002-Ohio-6892 at ¶ 16. This included the lack of bonding between all three children and Father, the lack of bonding between K.J. and Mother, and the sisterly nature of the bonding between T.J. and Z.J. and Mother. Mother and Father have not challenged any of the remaining findings made by the juvenile court pursuant to R.C. 2151.414. Nonetheless, we observe that these findings are likewise supported by competent and credible evidence. Id.
 {¶ 28} In light of the foregoing, we conclude that the juvenile court did not err in granting permanent custody of T.J., Z.J., and K.J. to the agency. *Page 9 
 {¶ 29} The first assignment of error is overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AGAINST APPELLANT [sic]."
 {¶ 32} Mother and Father next contend that admission of testimony by Mother's psychiatrist violated statutory law protecting privileged communications and was prejudicial. Mother and Father insist that the case plan did not contemplate that their submission to psychological testing, observation, and examination would permit experts to testify about their respective mental conditions. They conclude that the juvenile court's reliance upon Mother's mental instability in granting permanent custody to the agency was the result of prejudicial error.
 {¶ 33} The second assignment of error neglects to specifically name the individual whose testimony Mother and Father dispute, referring only to "mother's psychiatrist." The transcript for the permanent custody hearing contains testimony from four mental health professionals, only one of whom provided counseling to Mother. We presume, then, that the second assignment of error refers to the admission of testimony by Jacqueline Richied-Rust, a counselor with Samaritan Behavioral Health who began therapy sessions with Mother in April 2007.
 {¶ 34} Mother and Father did not raise any objection to the admission of Richied-Rust's testimony at the juvenile court level. Generally, a party's failure to draw the lower court's attention to a potential error, by objection or otherwise, results in a waiver of the issue for purposes of appeal, unless we find plain error. In reEbenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9-10. Invocation of the plain error doctrine in civil cases, however, is strictly limited: *Page 10 
 {¶ 35} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus. See, also,Ebenschweiger at ¶ 11.
 {¶ 36} In support of their argument that Richied-Rust's testimony was improperly admitted, Mother and Father cite two Ohio statutes protecting privileged communications, R.C. 2317.02 and R.C. 4732.19. The latter statute concerns communications between a licensed psychologist or licensed school psychologist and his or her client. According to her testimony at the permanent custody hearing, Richied-Rust is a licensed professional counselor. Consequently, the physician-patient privilege codified in R.C. 4723.19 is not applicable to the communications between Mother and Richied-Rust.
 {¶ 37} R.C. 2317.02(G)(1) concerns communications between, inter alia, a licensed professional counselor and his or her client. Such communications are privileged unless one of the exceptions enunciated in the statute applies. Pertinent to the present matter, R.C. 2317.02(G)(1)(g) provides that such communications are subject to disclosure when:
 {¶ 38} "The testimony is sought in a civil action and concerns court-ordered treatment or services received by a patient as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151 of the Revised Code."
 {¶ 39} In the present matter, the agency referred Mother to counseling and the referral was journalized in the case plan. Cf. In re Brown, Athens App. No. 06CA4, 2006-Ohio-2863, ¶ 17-20. Richied-Rust's testimony concerned communications between herself and Mother *Page 11 
during these counseling sessions. Therefore, the counselor-patient privilege codified in R.C. 2317.02(G)(1) was subject to this statutory exception, permitting disclosure of the communications between Mother and Richied-Rust. R.C. 2317.02(G)(1)(g).
 {¶ 40} We conclude that the juvenile court did not err in admitting Richied-Rust's testimony and, thus, there was no plain error. In reJ.J., 2006-Ohio-2999 at ¶ 9, citing State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68 (plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding).
 {¶ 41} The second assignment of error is overruled.
 {¶ 42} Judgment affirmed.
POWELL, P.J., and RINGLAND, J., concur.
[1] R.C. 2151.414(D) was amended by Section 1, Sub. H.B. No. 7, effective April 7, 2009. The amendments renumbered these five factors, placing them in R.C. 2151.414(D)(1)(a), (b), (c), (d), and (e). Our decision in the case at bar refers to the version in effect at the time the juvenile court rendered its September 9, 2008 decision granting permanent custody to the agency.
[2] K.J. resided with a different foster family than T.J. and Z.J. *Page 1