**In re A.S.**

[Cite as *In re A.S.*, 183 Ohio App.3d 697, 2009-Ohio-3932.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA2009–03–071, CA2009–03–083 and CA2009–03–088.

Decided Aug. 10, 2009.

698

Robin N. Piper, Butler County Prosecuting Attorney, and Michael A. Oster Jr., Assistant Prosecuting Attorney, for appellee, Butler County Department of Job & Family Services.

Dawn S. Garrett, for appellant Sheila S.

Traci Combs–Valerio, for appellant Amy S.

Jeannine Barbeau, for child.

Leslie M. Kennedy, guardian ad litem.

BRESSLER, Presiding Judge.

{¶ 1} Appellants, Amy S., Sheila S., and the child, A.S., appeal the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of a minor child to appellee, Butler County Department of Job & Family Services ("BCDJFS").

{¶ 2} Amy is A.S.'s biological mother, and Sheila is A.S.'s maternal grandmother. A.S.'s biological father is also Amy's biological father, and the father is not a party to this appeal. A.S. was born as a result of an incestuous relationship between Amy and her father. On November 9, 2005, BCDJFS filed a complaint alleging A.S. to be dependent. In this complaint, BCDJFS alleges that it has had a lengthy history with this family dating back to 1990 over concerns of domestic violence and physical and sexual abuse, and that several of A.S.'s siblings have

previously been adjudicated dependent. The complaint further alleges that Amy was arrested for domestic violence against A.S.'s sibling on October 29, 2005. After an ex parte hearing, the juvenile court awarded emergency temporary custody of A.S. to his adult sister, Tabitha M. In addition, a case plan to reunify A.S. with both Amy and Sheila was implemented.

{¶ 3} On February 8, 2006, the juvenile court adjudicated A.S. dependent. The court granted Amy and Sheila supervised visitation with A.S. at this time.

{¶ 4} On February 22, 2006, Sheila filed a motion requesting an emergency shelter care hearing, alleging that A.S. should be removed from Tabitha's home because there was a risk of immediate harm to A.S. After a hearing on March 29, 2006, the juvenile court terminated the order of temporary custody to Tabitha and placed A.S. in the temporary custody of BCDJFS.

{¶ 5} On May 24, 2006, the juvenile court held a dispositional hearing. Amy failed to appear for the hearing, and Sheila attended the hearing and requested temporary custody of A.S. The juvenile court denied Sheila's request but permitted her to continue supervised visitation with A.S.

{¶ 6} On January 16, 2007, the juvenile court held a review hearing and ordered that Sheila could transport A.S. to the home of Amanda Miller, who is A.S.'s maternal aunt, in Kentucky for unsupervised visitations. However, on August 8, 2007, BCDJFS moved to change the visitation arrangements between Sheila and A.S. after A.S. reported being hurt by his mother, grandmother, siblings, and other relatives on multiple occasions. On that date, the juvenile court held an ex parte hearing and rescinded its previous order permitting unsupervised visitations between Sheila and A.S., and granted Sheila supervised visitations with A.S.

{¶ 7} On August 22, 2007, BCDJFS moved to suspend visitation between Sheila and A.S., and on September 20, 2007 a juvenile court magistrate granted the motion. Sheila objected to the juvenile court magistrate's decision, and on November 28, 2007, the juvenile court sustained her objection in part. At that time, the juvenile court ordered that A.S. be moved to a different foster placement and that both Amy and Sheila could resume supervised visitations with A.S.

{¶ 8} On November 29, 2007, BCDJFS moved for permanent custody, stating that A.S. cannot be placed with either parent within a reasonable time and should not be placed with either parent, that neither parent can provide adequate parental care for A.S., and that granting permanent custody of A.S. to BCDJFS is in the child's best interest. On April 8, 2008, Amy moved for legal custody of A.S.

{¶ 9} The juvenile court held a trial before a magistrate on the custody motions in several parts, from May 2008 to October 2008. On November 18, 2008, before the juvenile court magistrate issued a decision, Sheila moved for legal custody of A.S.

{¶ 10} On January 12, 2009, the magistrate issued a decision granting BCDJFS's motion for permanent custody. Both Amy and Sheila objected to the magistrate's decision, and on February 9, 2009, the juvenile court overruled all objections and adopted the magistrate's findings and orders.

{¶ 11} Amy, Sheila, and A.S., through his attorney, separately appeal the juvenile court's decision. In their appeals, Amy raises one assignment of error, Sheila raises three assignments of error, and A.S. raises one assignment of error. Amy's sole assignment of error, Sheila's second and third assignments of error, and A.S.'s assignment of error will be discussed together.

{¶ 12} Amy's Assignment of Error:

{¶ 13} "The trial court erred to the prejudice of appellant by granting the agency's motion for permanent custody."

{¶ 14} Sheila's Assignment of Error No. 2:

{¶ 15} "The court erred as a matter of fact and law and abused its discretion when it found terminating the parental rights of the mother and not reunifying with appellant to be in the child's best interest because such was not the only means of obtaining a legally secure permanent placement for the child, such was not supported by clear and convincing evidence and/or [sic] because permanent custody was not in the child's best interest."

{¶ 16} Sheila's Assignment of Error No. 3:

{¶ 17} "The court's decision and order of permanent custody was against the manifest weight of the evidence, there was insufficient evidence to support the trial court's findings and the evidence presented failed to meet the requisite clear and convincing standard."

{¶ 18} A.S.'s Assignment of Error:

{¶ 19} "The juvenile court erred as a matter of law and abused its discretion when it found that terminating mother's parental rights was in the child's best interest."

{¶ 20} Initially, we note that Sheila, who is not a parent of this child, has presented several arguments under her assignments of error. While Sheila was considered as a potential custodian of the child, the juvenile court was not obligated to do so pursuant to her motion for *legal custody* filed on November 18, 2008. "Any person who seeks an award of legal custody of a child must, in accordance with [R.C. 2151.353 and Juv.R. 34] file a motion, prior to the

dispositional hearing, requesting such custody." *In re L.R.T.*, 165 Ohio App.3d 77, 2006-Ohio-207, 844 N.E.2d 914, ¶ 13. However, we will consider Sheila's arguments as they pertain to the juvenile court's decision granting BCDJFS's motion for permanent custody.

{¶ 21} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer* (1982), 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520, 741 N.E.2d 901.

{¶ 22} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that (1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D), and (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22–month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 1–36; *In re Ebenschweiger*, Butler App. No. CA2003–04–080, 2003-Ohio-5990, 2003 WL 22533124, ¶ 9.

{¶ 23} The juvenile court found by clear and convincing evidence, and appellants do not dispute, that A.S. is dependent, has been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22–month period as of the date BCDJFS filed the permanent-custody motion, and that A.S. is legally abandoned. However, appellants dispute the juvenile court's finding that granting permanent custody of A.S. to BCDJFS is in the child's best interest.

{¶ 24} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent-custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:

{¶ 25} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

{¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 30} With respect to R.C. 2151.414(D)(1), the magistrate found that A.S. was initially removed from Sheila's custody due to domestic violence in her home. According to the record, BCDJFS has received at least 14 referrals regarding this family, including several instances of domestic violence where Sheila was alleged to have been the perpetrator. When the juvenile court liberalized Sheila's visitations with A.S. from supervised to unsupervised, A.S. was reported to have returned from weekend visitations with bruises, scratches, and other injuries. A.S. reported that on these visitations, A.S. was frequently slapped, scratched, and punched by his family members. After this series of incidents, A.S. and the child's therapist requested a change in visitation, and the juvenile court reinstated supervised visitations. Sheila has consistently attended visitations with A.S., but Amy did not attend visitations consistently until after BCDJFS moved for permanent custody.

{¶ 31} During the time when visitations with A.S. were unsupervised, the child had contact with siblings and other relatives. However, A.S. reported abuse by these siblings and relatives and expressed that he does not wish to visit them.

{¶ 32} A.S.'s guardian ad litem ("GAL") reports that A.S. has resided with the same therapeutic foster home for 31 months and that he has expressed a desire to remain in this foster home. The juvenile court found that A.S. is very bonded to his foster mother and that his foster mother will consider adopting him.

{¶ 33} With respect to R.C. 2151.414(D)(2), the juvenile court indicated that the GAL recommends granting permanent custody of the child to BCDJFS. Despite the fact that A.S., through his attorney, has joined in this appeal with Amy and Sheila, the child's GAL maintains that the juvenile court correctly granted BCDJFS's motion for permanent custody. Further, the juvenile court stated that during an in camera interview with A.S., the child stated that he wished to

remain in the custody of his foster mother but would like to continue to visit Amy and her newest child, who is A.S.'s half-brother.

{¶ 34} With respect to R.C. 2151.414(D)(3), the juvenile court found that at the time BCDJFS filed the complaint, Sheila had legal custody of A.S. based on a previous case involving this family. At that time, Amy was only 14 years old. After BCDJFS filed the complaint in this case, A.S. was placed with his maternal aunt, Tabitha M. A.S. was removed from this placement and placed in the temporary custody of BCDJFS on March 29, 2006 and remained in BCDJFS's custody until and after the filing of the permanent-custody motion on November 29, 2007. Accordingly, the juvenile court found that A.S. has been in BCDJFS's custody for more than 12 months of a consecutive 22–month period preceding the filing of the permanent-custody motion.

{¶ 35} With respect to R.C. 2151.414(D)(4), the juvenile court found that A.S. is in need of a legally secure permanent placement as he has been in alternative care since November 2005 and that this need cannot be met without granting BCDJFS's motion for permanent custody. The juvenile court found that despite Amy's claim that she has made progress in the case plan, it could not ignore the nearly two-year gap between her initial court appearances and her participation in any case-plan services. While Amy claims the reason for her lack of involvement in this case is that she was pregnant with another child, the record reveals that she was also incarcerated and had outstanding arrest warrants during this period.

{¶ 36} Additionally, the juvenile court expressed concern over Amy's lack of knowledge as to important areas of A.S.'s life, including his academic performance, emotional adjustment, and daily activities, even after she became involved in this case. Dr. Joseph Lipari, the psychologist who evaluated Amy, stated that as a result of her own childhood abuse, Amy has a greatly diminished capacity to relate to others, and that it would be very difficult for Amy to provide the consistency and stability that a child with special needs requires. Dr. Lipari stated that Amy was not able to effectively interact and communicate with A.S. Dr. Lipari further stated that reunification with A.S. should not even be considered until Amy is willing to undergo long-term therapy. Amy has stated that she does not feel she needs therapy, but has begun counseling as required under the case plan.

{¶ 37} Further, the juvenile court stated it is concerned about Amy's ability to support A.S. financially. Amy receives public assistance and works sporadically for her landlord, but has no full-time job, has no driver's license, and has expressed no clear plan as to how she can financially support A.S. in the long term. Also, the juvenile court noted that Amy still owes substantial court costs as a result of a criminal case.

{¶ 38} With respect to Sheila, the juvenile court noted that she has actively engaged in case-plan services and visitations. However, the juvenile court is concerned that Sheila does not fully comprehend how the abusive dynamics of her family have directly affected A.S. Several experts testified that the physical abuse A.S. has suffered while under Sheila's care has had a severe negative impact on his development. Further, Sheila has shown no ability to protect A.S. from abuse, nor has she demonstrated that she can provide a safe, stable environment for A.S.

{¶ 39} With respect to R.C. 2151.414(E)(10), the juvenile court found that A.S. has been abandoned. The juvenile court found that Amy failed to have contact with A.S. from August 22, 2007 until November 28, 2007. Further, the juvenile court noted that Amy did not have contact with the child from the time he was placed in foster care on March 29, 2006 until January 2007. R.C. 2151.011(C) provides that "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶ 40} In addition, the juvenile court considered R.C. 2151.414(E)(1), which provides:

{¶ 41} "Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

{¶ 42} Despite participating in case-plan services and being reunited with two of her own children, the juvenile court found that Sheila has failed continuously and repeatedly to substantially remedy the conditions that led to A.S.'s removal. As discussed above, A.S. was removed from Sheila's care due to allegations of domestic violence, and she has not demonstrated that she can consistently keep A.S. safe from abuse from family members.

{¶ 43} While Amy began making progress with case-plan services after BCDJFS moved for permanent custody, she is not excused from abandoning A.S. and failing to comply with case-plan services for nearly two years. Based on Dr.

Lipari's evaluation of Amy, she will not be in a position to parent A.S. until she undergoes long-term treatment. Further, as discussed above, Amy cannot financially support A.S. Accordingly, the juvenile court also found that Amy has failed continuously and repeatedly to substantially remedy the conditions that led to A.S.'s removal.

{¶ 44} The juvenile court also found R.C. 2151.414(E)(4) applicable, which provides that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." [1] As discussed above, Amy demonstrated a lack of commitment toward A.S. by failing to regularly support, visit, or communicate with A.S. when able to do so for several periods of time while this case has been pending.

{¶ 45} With respect to appellants' argument that the appropriate disposition in this case would have been a planned permanent living arrangement ("PPLA"), we remind appellants that the juvenile court was without authority to place A.S. in a PPLA, as BCDJFS did not file a motion requesting such a disposition. *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 37. Moreover, BCDJFS had no obligation to request such a disposition.

{¶ 46} In finding that granting permanent custody of A.S. to BCDJFS is in the child's best interest, the juvenile court thoroughly analyzed the evidence and testimony from the permanent-custody hearings, and its findings are supported by sufficient clear and convincing evidence. As an appellate court reviewing a decision granting permanent custody, we neither weigh the evidence nor assess the credibility of the witnesses, but instead determine whether there is sufficient clear and convincing evidence to support the juvenile court's decision. See *In re Dunn*, Tuscarawas App. No. 2008AP030018, 2008-Ohio-3785, 2008 WL 2916371.

{¶ 47} Amy's assignment of error, Sheila's second and third assignments of error, and A.S.'s assignment of error are overruled.

{¶ 48} Sheila's Assignment of Error No. 1:

{¶ 49} "The trial court erred, appellant was denied her constitutional due process and confrontational rights, and the outcome was prejudiced when the court admitted and considered improper and/or irrelevant evidence at trial."

---

1. We note that when the juvenile court decided this case, R.C. 2151.414(E)(4) existed as R.C. 2151.414(E)(5).

{¶ 50} In her first assignment of error, Sheila presents several arguments that the juvenile court erred in admitting and considering certain evidence at trial. First, she maintains that her psychological evaluation from 1999 was improperly admitted into evidence and that admission of therapy reports into evidence violates her constitutional due process and confrontational rights.

{¶ 51} Initially, we note, as we stated in *In re K.E.*, Butler App. No. CA2007–03–069, 2007-Ohio-3967, 2007 WL 2229573; and *In re House* (Feb. 24, 1992), Butler App. Nos. CA91–01–016, and CA91–02–022, 11, 1992 WL 35038:

{¶ 52} "The Sixth Amendment provides, in pertinent part, '*[i]n all criminal prosecutions*, the accused shall enjoy the right * * * to be confronted with the witnesses against him.' (Emphasis added.) The right of cross-examination is one of the primary interests secured by the Confrontation Clause. *Douglas v. Alabama* (1965), 380 U.S. 415, 418, 85 S.Ct. 1074, 1076[, 13 L.Ed.2d 934]. However, proceedings instituted in a juvenile court are civil in nature and not criminal. *Cope v. Campbell* (1964), 175 Ohio St. 475[, 26 O.O.2d 88, 196 N.E.2d 457]. Since an action commenced in juvenile court is by definition non-criminal, the Sixth Amendment is inapplicable and the right to confrontation and cross-examination does not attach."

{¶ 53} The admission or exclusion of evidence is within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *In re J.D.*, Butler App. No. CA2005–09–375, 2006-Ohio-3468, 2006 WL 1840385, ¶ 7. Therefore, we must determine whether the juvenile court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues. Id.

{¶ 54} Hearsay is defined in the Rules of Evidence as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C); *In re J.J.*, Butler App. No. CA2005–12–525, 2006-Ohio-2999, 2006 WL 1642150, ¶ 18. Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802.

{¶ 55} At the permanent-custody trial, BCDJFS moved to admit into evidence Sheila's certified therapy records from Cumberland River Comprehensive Care Center and a psychological evaluation report of Sheila from 1999. Sheila objected to the admission of these documents, arguing that they are hearsay evidence and that BCDJFS failed to provide a proper foundation for admitting the records. The juvenile court overruled Sheila's objections and admitted the certified records and psychological report into evidence under an Evid.R. 804(B) exception to the hearsay rule.

{¶ 56} The record does not indicate which Evid.R. 804(B) hearsay exception the juvenile court applied in admitting the certified documents. Evid.R. 804(B) creates hearsay exceptions for the following types of evidence: (1) former testimony, (2) statement under belief of impending death, (3) statement against interest, (4) statement against personal or family history, (5) statement by a deceased or incompetent person, and (6) forfeiture by wrongdoing.

{¶ 57} We find that the trial court erred in admitting the certified records and 1999 psychological report into evidence pursuant to Evid.R. 804(B), as none of the hearsay exceptions under this rule applies to the records and report. However, we find this error to be harmless. While these documents may be admissible under other Rules of Evidence, there is nothing in the juvenile court's decision indicating that the juvenile court actually considered these records or otherwise relied on them in reaching its decision to grant BCDJFS's motion for permanent custody.[2] There is ample admissible evidence in the record, as discussed above, that supports the juvenile court's decision granting BCDJFS's motion for permanent custody.

{¶ 58} Further, we find that a substantial portion of information contained in the 1999 psychological report is included in a more recent psychological evaluation of Sheila from 2006, which was properly admitted into evidence. An exhibit that is improperly admitted into evidence is not prejudicial where it contains a mere surplus of facts. See *State v. Lallathin*, Noble App. No. 299, 2003-Ohio-3478, 2003 WL 21500290, ¶ 37. Accordingly, we find that admission of these records and report did not prejudice Sheila, nor did they violate her due process rights.

{¶ 59} Next, Sheila argues that the juvenile court magistrate erred in ordering a stay of the juvenile court's previous order to change A.S.'s foster living arrangement. Sheila maintains that the magistrate abused its discretion in ordering this stay and in considering any evidence related to A.S.'s foster family.

{¶ 60} On November 28, 2007, the juvenile court sustained in part Sheila's objections to the juvenile court magistrate's decision to terminate Sheila's visitation on August 29, 2007. Specifically, the juvenile court stated, "The child's foster placement shall be changed. This shall take place in a gradual manner with input from the attorney for the child * * * and the GAL. * * * Amy [S.] is hereby granted supervised visitation as a part of this order. Sheila [S.] is hereby granted supervised visitation as a part of this order."

---

2. We note that Sheila's therapy at Cumberland River was part of her case plan. Given that Sheila argues that she complied with case-plan services, it is disingenuous to also argue that she was prejudiced by the admission of her case-plan therapy records.

{¶ 61} At a hearing on February 21, 2008 before the magistrate, Amy notified the court that A.S.'s GAL had a conflict because the GAL had served as Amy's GAL in a previous case. On April 1, 2008, A.S.'s GAL was relieved of her duties and the magistrate ordered that a new GAL be appointed for the child. Because the juvenile court's previous order to change A.S.'s foster-living arrangement required input from the child's original GAL, the magistrate stayed the juvenile court's order.

{¶ 62} We find that based on these facts and circumstances, the magistrate was authorized to stay the order to change A.S.'s foster placement. As BCDJFS correctly states, Civ.R. 53(D)(2)(a)(i) provides that "a magistrate may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." The magistrate did not "overrule" the juvenile court's previous order, as Sheila argues, but instead stayed the juvenile court's order until the issues presented could be resolved. This temporary stay was not "dispositive of a claim or defense of a party." See Civ.R. 53(D)(2)(a)(i).

{¶ 63} Moreover, Civ.R. 53(C)(2), authorizes magistrates "to regulate all proceedings as if by the court." Civ.R. 53(D)(2)(b) permits a party to file a motion with the court within ten days after the order is entered, asking that the magistrate's order be set aside. Sheila failed to file a motion to set aside the magistrate's order, and her failure to do so results in a forfeiture of this issue on appeal. See *Rayess v. Kaplan Edn. Ctr.,* Greene App. No. 08–CA–29, 2009-Ohio-1962, 2009 WL 1125537, ¶ 26; *Hayne v. Hayne,* Medina App. No. 07CA0100–M, 2008-Ohio-4296, 2008 WL 3892155, ¶ 36.

{¶ 64} Sheila's first assignment of error is overruled.

{¶ 65} The judgment is affirmed.

Judgment affirmed.

YOUNG, J., concurs.

RINGLAND, J., concurs separately.

RINGLAND, Judge, concurring.

{¶ 66} Based on the facts of this case, I concur in judgment. However, I find it troublesome that the Ohio Supreme Court's reading of R.C. 2151.353(A)(5) in *In re A.B.,* 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, limits the juvenile court's power to fulfill its statutory obligations. According to R.C. 2151.01(A), the Ohio General Assembly charged the juvenile courts with providing for "the care, protection, and mental and physical development of children subject to Chapter 2151 of the Revised Code." In doing so, determining a child's best

interests is the paramount responsibility of the juvenile court when considering custody issues and whether or not to terminate a parent's rights under R.C. 2151.414(B). Specifically, that section parcels out several factors a court is required to consider while determining the child's best interests. Although I agree with the majority that the juvenile court correctly considered these factors, I write separately to express my discontent that juvenile courts are not granted the discretion to order a planned permanent living arrangement ("PPLA") absent a request for one from an involved children services agency.

{¶ 67} As Justice Pfeifer noted in *A.B.*'s dissenting opinion, a major difference exists between an initial determination that a child is abused, dependent, or neglected and subsequent modifications of initial orders. During the preliminary adjudication phase, children service agencies play an important role and may be in a better position to determine the best placement option for the affected child. However, once the initial orders need modification or termination, the juvenile court is "in the best position to determine whether a permanent placement is in the best interests of the child." Id. at ¶ 45.

{¶ 68} Nevertheless, because the Ohio Supreme Court's current reading of R.C. 2151.353(A) prohibits a juvenile court from sua sponte ordering a PPLA, children service agencies have more authority and discretion than a juvenile court when determining what placement is best for a child. As one writer aptly stated, "The Ohio Supreme Court's decision in *A.B.* emasculates the role of * * * the judge in child protection hearings in Ohio. The decision assumes that the agency is the sole (or best) arbiter of the child's best interests by giving broad authority to the state child welfare agency. * * * Only when the agency has first determined a PPLA placement to be the child's best interest may a judge determine that the placement is in fact in the child's best interest. This is, to put it mildly, an illogical result. Such a result ties the hands of judges and [guardian ad litems] who disagree with the agency's determination of the child's best interest, and it may even prevent the child's true best interests from being achieved." McGill, Agency Knows Best? Restricting Judges' Ability to Place Children in Alternative Planned Permanent Living Arrangements (2007), 58 Case W. Res.L.Rev. 247.

{¶ 69} In addition to usurping the judge's role in determining the child's best interests, prohibiting a juvenile court from ordering a PPLA also leaves a children services agency's decision not to request one unreviewable. Unlike the juvenile court, whose decision is reviewed by higher courts (if not its electorate), agency decisions are not reviewable under the current reading of R.C. 2151.353(A)(5) because if children services refuses to request a PPLA, the juvenile court cannot even consider whether such a plan would be in the child's best interest.

{¶ 70} Because the ultimate responsibility of determining a child's best interests rests with the juvenile court, prohibiting it from ordering or considering that a PPLA may be in the child's best interest absent a request from a children services agency may be a violation of the separation-of-powers doctrine.

{¶ 71} I realize that the parties to the case at bar did not raise this constitutional issue. However, I cannot ignore that the outcome of vesting discretion to implement a PPLA with an agency rather than the juvenile court (whether through neglect or design) is the "tail wagging the dog" and substantially curtails the juvenile court's ability to fulfill its statutory obligations. Therefore, and until the Ohio Supreme Court reconsiders its interpretation and vests discretion in juvenile courts to order PPLAs, I concur in judgment only.